BRAGASSA v. ST. LOUIS CYCLE et al.

(Circuit Court of Appeals, Fifth Circuit. February 26, 1901.)

No. 962.

1. BANKRUPTCY—RIGHT TO DISCHARGE—FAILURE TO KEEP BOOKS OF ACCOUNT.
The action of an insolvent, in mingling money of his own with that of his wife, and depositing it together in banks in his wife's name, without keeping any books of account or records showing what portion of such deposits was owned by him, for the admitted purpose of preventing his creditors from reaching it, when such practice was continued until he filed his petition in voluntary bankruptcy, constituted a failure to keep books of account or records, with fraudulent intent to conceal his true financial condition and in contemplation of bankruptcy, which debars him from the right to a discharge under Bankr. Act 1898, § 14b.

2. SAME—COSTS—FEES OF REFEREE ON APPLICATION FOR DISCHARGE.
Where it becomes necessary to refer an application for a discharge to a referee for the taking of testimony, and the discharge is refused, it is not error to tax the fees of the referee to the bankrupt.

Appeal from the District Court of the United States for the Northern District of Texas.

. The bankrupt filed his petition praying to be adjudged a voluntary bankrupt in the proper court on the 10th of June, 1899. Shortly thereafter the court adjudged him a bankrupt, and referred the matter to the referee, who, in proper time, appointed a trustee to the estate. A general examination of the bankrupt was held at the creditors' meeting, and later on, in due course and as provided by law, the bankrupt filed his application to be discharged. The appellees herein resisted the discharge, and filed specifications opposing it. A trial was had upon certain of the specifications, and the referee recommended to the court that the bankrupt be discharged. An application was then made by appellees to re-refer the matter to the referee for further hearing, claiming that they had been misled, etc. The application was sustained, and a new trial of the issues was had before the referee, who again recommended to the court that the bankrupt be discharged. The appellees filed exceptions before the district judge, and the question of discharge or·not came before the court on the testimony found in the record. The court refused the discharge, and filed written reasons therefor, fully reported in Re Bragasa (D. C.) 103 Fed. 936.

John W. Wray, for appellant.
W. B. Paddock, for appellees.

Before PARDEE and SHELBY, Circuit Judges.

PARDEE, Circuit Judge. The court a qua found the following specification to be true, to wit:

"That with fraudulent intent to conceal his true financial condition, and to prevent his creditors from collecting their debts, the bankrupt has, in contemplation of bankruptcy, conducted his banking business in the name of his wife, J. E. Bragassa; that he has deposited in the American National Bank and the Farmers' & Mechanics' National Bank, at Fort Worth, Texas, his earnings and income, in the name of his wife, so intermingling his money and property with that which he claims was hers that it is impossible to distinguish how much of said deposits were his and how much belonged to some one else. Wherefore, by reason of such willful and fraudulent management of his affairs, he is now unable to make a clear and intelligent statement of his financial condition previous to or at the time of filing of his petition in bankruptcy."

A careful study of the evidence in the transcript shows that the finding is correct, and this court is compelled to approve the same. The appellant submits several propositions, which, in deference to counsel, we will consider in order:

1. "The language of the specification is too vague, uncertain, indefinite, and general to authorize or permit the introduction of testimony touching the method of the bankrupt in transacting the banking business in the different banks, in connection with himself and wife."

Counsel in his oral argument, as well as in his brief, fails to point out wherein the specification is vague, uncertain, indefinite, or too general. In taking the evidence, both sides seemed to well understand the issue. We doubt if the nature of the objection to the discharge called for any detailed specification.

2. "The court erred in holding that the testimony was sufficient, under the fifth specification, to show that the bankrupt intermingled his money with that of his wife in the banks in such a way that it was impossible to distinguish how much of said deposits were his and how much belonged to some one else, and that the same was done by him in contemplation of bankruptcy, and with fraudulent intent."

The answer to this is found in the opinion of the judge below, to wit:

"The record further discloses that no books or records were kept by the bankrupt showing what funds he had and what disposition was made of them, and the bank accounts being kept in the condition in which they were kept throw no light upon the true financial condition of the bankrupt. The only question remaining for disposition is: Did the bankrupt's failure to keep books of account or records from which his true condition might be ascertained arise from the fraudulent intent to conceal his true financial condition and in contemplation of bankruptcy? The intent of the bankrupt must be ascertained from the circumstances surrounding his failure to keep books of account or records. After he failed in business he had a number of business transactions which resulted in his having money in his hands. Some of the money which came into his hands belonged to his wife, and some to himself. He deposited the larger part of it in two different banks in his wife's name. He testified that he did this to keep anybody from 'jumping on' it before he had an opportunity to use it. He was concealing from his creditors that which might have been subject to the payment of their debts, could they have reached it. In view of his own affirmative testimony as to the purpose which moved him in concealing his funds, it is neither unjust nor harsh to presume that he failed to make any record of his receipts and disbursements for a similar purpose. It is but an incident to the concealment of funds from creditors to conceal or fail to keep trace of such funds through books of account or records. In this case the bankrupt kept the banks with which in reality he did business from making any record of funds in his name. The pass books which were issued to him, the checks which he wrote, and the stubs which he kept told no story of any money belonging to him. Even to the extent that ordinary business dealing with banks would compel a record, he avoided making it. The bankrupt was certainly inspired with fraudulent intent to conceal his true financial condition in pursuing this course. It is also quite clear that this was done in contemplation of bankruptcy. He began keeping his bank account in his wife's name in 1897. This was before the bankrupt law had been enacted. This course was then pursued in view of his insolvency, and because of his desire to handle money coming into his possession as he chose. The bankrupt law was passed and became effective on July 1, 1898. He still continued to keep no books of account, no record of his receipts and disbursements, and still continued to mingle his own funds with those of his wife, in the same accounts, in the wife's name, at two different banks, and he pursued this method up to the time he filed his voluntary petition in bankruptcy, on June 10, 1899. When he first contemplated taking the benefit of the act no one knows but himself. However, it was necessarily before he filed his petition, and from that time forward he lived in the consciousness of failing to keep even the records of his banking business in such shape as to be of any assistance or avail in an attempted ascertainment of his true financial condition."

—With all of which we concur.

3. "Two things must concur in order to prevent the discharge of the bankrupt: (1) He must have deposited his money in his wife's name with a fraudulent intent; (2) it must have been done in contemplation of bankruptcy."

Sufficient evidence of the fact and the intent is found in the record.

4. "It is not the duty of the court, on its own motion, to seek out grounds to defeat a discharge where the statutory prerequisites in the bankruptcy proceedings have been met."

As to this, all that is necessary to say is:

"The judge shall hear the application for a discharge, * * * and investigate the merits of the application, and discharge the applicant, unless he has (1) committed an offense punishable by imprisonment, as herein provided; or (2) with fraudulent [intent] to conceal his true financial condition. and, in contemplation of bankruptcy, destroyed, concealed, or failed to keep books of account or records from which is [his] true condition might be ascertained."

5. "There is no warrant or authority of law for the court to have allowed $50 for compensation to the referee for services on the hearings before him of the specifications opposing the discharge of the bankrupt."

It is a fact that, for the services rendered by the referee on the two trials, the court awarded him $50, but we find that the references were provoked by the bankrupt, and, as the costs were legitimately incurred, we see no other way than to tax the same to the losing party. The judgment appealed from is affirmed.