## In re DAUCHY.

(District Court, N. D. New York. May 19, 1903.)

1. BANKRUPTCY—DISCHARGE—DENIAL OF APPLICATION — GROUNDS — CONCEAL-
MENT OF PROPERTY.

Bankr. Act July 1, 1898, § 14, subd. "b," 30 Stat. 550, c. 541 [U. S. Comp. St. 1901, p. 3427], provides that a discharge will be refused if the bankrupt has committed an offense punishable by imprisonment as provided in the act. Section 29, subd. "b," 30 Stat. 554, c. 541 [U. S. Comp. St. 1901, p. 3433], provides for the punishment by imprisonment of a bankrupt who has knowingly and fraudulently concealed property from his trustee, or who has made a false oath in relation to the proceedings in bankruptcy. An amendment to said section 14, subd. "b," made February 5, 1903 (Act Feb. 5, 1903, § 4, 32 Stat. 797, c. 487), provides that such discharge will be refused if the bankrupt has "(4) at any time subsequent to the first day of the four months immediately preceding the filing of the petition transferred, removed, destroyed or concealed * * * any of his property with intent to hinder, delay, or defraud his creditors." *Held*, that where, prior to the amendment, property was transferred by a bankrupt by a deed absolute on its face, and without consideration, but not limited by an agreement retaining some interest in the grantor, there was, as to such property, no concealment by the bankrupt from the trustee of property belonging to the estate.

2. SAME—SECRET TRUST—SUFFICIENCY OF EVIDENCE.

More than two years prior to the date when she was adjudged a bankrupt, a debtor conveyed real estate, without consideration, to her father, who conveyed it to the debtor's son. It was shown that the debtor was insolvent at this time, if liable on a note indorsed by her; that after the conveyance the property was rented, the negotiations being mainly conducted by her; that she indorsed checks given her for the rent to her husband, who used the proceeds for the benefit of the family, including the son, who was 23 years old, and not accustomed to business; and that she received some of the rent, but expended it for repairs on the property. It did not appear that there was any agreement to hold the property for her benefit or to reconvey to her, or that she retained an interest therein, or was to have the income thereof, or that she then contemplated bankruptcy, or had, since the conveyance, claimed any beneficial interest in the property. *Held* insufficient to defeat her application for a discharge on the ground that, while a bankrupt, she knowingly or fraudulently concealed the property from her trustee, or to prove that it was held in secret trust for her.

**B. SAME—PREPONDERANCE OF EVIDENCE.**
 The concealment of property by a bankrupt, sought to be shown in order to defeat his application for discharge, need only be shown by a fair preponderance of satisfactory evidence, as such a proceeding is not a criminal one, in any sense.

Application by Bankrupt for Order Confirming Report of Special Master and Granting a Discharge in Bankruptcy.

Thomas O'Connor, for bankrupt.

Walter S. Logan, for opposing creditors.

RAY, District Judge. Esther A. Dauchy was duly adjudged a bankrupt on her own petition on the 24th day of June, 1901. It is sought to defeat her application for a discharge on the ground that while a bankrupt she knowingly and fraudulently concealed from her trustee in bankruptcy certain property, real estate in Lansingburg, N. Y., and real estate in Nantucket, Mass., which it is alleged she owned—in fact, that is, that it was held by another under a secret trust for her. The question is, is there proof to sustain the allegation? That more than four months prior to the filing of her petition in bankruptcy she disposed of this property by deed in fraud of her creditors cannot be denied. If the creditors had taken proper action in time, it cannot be doubted that these conveyances would have been set aside as fraudulent as to them. But no proceedings of this nature have been had. The trustee has not taken any steps to have such deeds or conveyances declared fraudulent and void. They were voidable, not void. In 1889 Esther A. Dauchy purchased a cottage at Nantucket, Mass. She gave a mortgage for the amount of the purchase money to her grandmother, and in August, 1893, the grandmother having died, her executor discharged the mortgage without payment. May 15, 1896, said Esther A. Dauchy indorsed the note of her husband's firm for $36,000, which went into judgment December 21, 1900, for $45,403.89. In March, 1897, Esther A. Dauchy deeded this property to her father, Albert E. Powers, in consideration, expressed, of $5,000. August 10, 1898, Mr. Powers reconveyed the property to Esther A. Dauchy. November 28, 1898, Mrs. Dauchy again conveyed the property to said Powers, for expressed consideration of $500, and he conveyed it to Mrs. Dauchy's son William P. Dauchy in consideration, expressed, of $1. The proof shows that Mrs. Dauchy was insolvent at this time, if she had to pay the note. July 15, 1901, shortly after Mrs. Dauchy was adjudged a bankrupt, William P. Dauchy mortgaged the property to one Allen G. Peckham for $5,000, its full value; and in November, 1901, said Joseph A. Powers purchased said mortgage, paying the full amount thereof, with interest. The property has been rented, when occupied at all, since 1898. In 1901 the lease was executed by one Mowry, in the name of the bankrupt, to one Cabot. She mainly conducted the negotiations. The bankrupt received some of this rent, but expended it for repairs. It is evident from the evidence that the husband has been, in the main, controlling and enjoying this property. Mrs. Dauchy, so far as is shown, could not have re-

¶ 3. See Bankruptcy, vol. 6, Cent. Dig. § 722.
 122 F.—44

covered this property or its possession from her son. No agreement to hold for her benefit or to reconvey to her has been shown. The evidence is of such a character that he who reads it must suspect and entertain the moral conviction that this whole transaction was fraudulent, and that Mrs. Dauchy entertained the belief that at some time the son would reconvey the property to her. Probably he will, but the proof does not establish such an agreement or understanding, and the proof would not warrant a finding or judgment in her favor to compel a reconveyance by the son. The property had ceased to be hers long before these bankruptcy proceedings were instituted. Her possession was gone before that. The law, unfortunately, did not, and does not now, as amended, provide for refusing a discharge where the bankrupt disposes of property in fraud of creditors more than four months prior to the filing of the petition. These creditors, had they been diligent, might have recovered this property. This court regrets that the law will permit a discharge in such a case as this, but cannot turn or twist the evidence to accomplish a purpose the law ought to reach by express provision. Again, these creditors should have proceeded by supplementary proceedings to develop the facts when execution on the judgment against Mrs. Dauchy was returned unsatisfied, and should have followed that proceeding by a creditors' bill. In case proceedings in bankruptcy had intervened, this court could have directed the trustee to proceed against the fraudulent vendees to recover the property for the benefit of creditors.

In reference to the fact that Mrs. Dauchy has exercised some dominion over the property since she last parted with the title, it is only necessary to say that such acts are natural; the present owner being her son, a young man of only 23 years, and evidently a person not accustomed to do much business. They are consistent with absolute ownership in the son. They do not establish a secret trust. It is well, perhaps, to call attention to the provisions of the bankruptcy act as it stood before the amendments of 1903, under which this case must be decided, and as it stands now, as showing that Congress has not yet seen fit to extend the grounds for refusing a discharge in bankruptcy to such a case as this.

Section 14, subd. "b," provides:

The judge shall hear the application for a discharge, and such proofs and pleas as may be made in opposition thereto by parties in interest, at such time as will give parties in interest a reasonable opportunity to be fully heard, and investigate the merits of the application and discharge the applicant unless he has (1) committed an offense punishable by imprisonment as herein provided; or (2) with fraudulent intent to conceal his true financial condition and in contemplation of bankruptcy, destroyed, concealed, or failed to keep books of account or records from which his true condition might be ascertained. Act July 1, 1898, c. 541, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3427].

Section 29, subd. "b," "Offenses," provides as follows:

A person shall be punished, by imprisonment for a period not to exceed two years, upon conviction of the offense of having knowingly and fraudulently (1) concealed while a bankrupt, or after his discharge, from his trustee any of the property belonging to his estate in bankruptcy; or (2) made a false oath or account in, or in relation to, any proceeding in bankruptcy; (3) presented under oath any false claim for proof against the estate of a bankrupt, or used any such claim in composition personally or by agent, proxy, or at-

torney, or as agent, proxy, or attorney; or (4) received any material amount of property from a bankrupt after the filing of the petition, with intent to defeat this act; or (5) extorted or attempted to extort any money or property from any person as a consideration for acting or forbearing to act in bankruptcy proceedings. Act July 1, 1898, c. 541, 30 Stat. 554 [U. S. Comp. St. 1901, p. 3433].

As amended February 5, 1903 (Act Feb. 5, 1903, § 4; 32 Stat. 797, c. 487), subdivision "b" of section 14 reads as follows:

The judge shall hear the application for a discharge, and such proofs and pleas as may be made in opposition thereto by parties in interest, at such time as will give parties in interest a reasonable opportunity to be fully heard, and investigate the merits of the application and discharge the applicant unless he has (1) committed an offense punishable by imprisonment as herein provided; or (2) with intent to conceal his financial condition, destroyed, concealed, or failed to keep books of account or records from which such condition might be ascertained; or (3) obtained property on credit from any person upon a materially false statement in writing made to such person for the purpose of obtaining such property on credit; or (4) at any time subsequent to the first day of the four months immediately preceding the filing of the petition transferred, removed, destroyed, or concealed, or permitted to be removed, destroyed, or concealed any of his property with intent to hinder, delay, or defraud his creditors; or (5) in voluntary proceedings been granted a discharge in bankruptcy within six years; or (6) in the course of the proceedings in bankruptcy refused to obey any lawful order of or to answer any material question approved by the court.

It will be noted that there is added as a ground of refusing a discharge the following:

(4) At any time subsequent to the first day of the four months immediately preceding the filing of the petition transferred, removed, destroyed, or concealed or permitted to be removed, destroyed, or concealed any of his property with intent to hinder, delay, or defraud his creditors.

This is a new ground for refusing a discharge, and shows that it is not a ground for denying a discharge in proceedings instituted prior to the amendment of 1903.

If Esther A. Dauchy had been the owner of this property at a time when she contemplated taking the benefit of the bankruptcy act, and there was proof of that fact, and that she transferred it to Powers, and through him to her son, for the purpose of concealing it from her trustee in bankruptcy, when appointed, with the expectation that when discharged it would be reconveyed to her, this court would hold that she had concealed property belonging to her estate from the trustee. In such case the transfer would be not only in fraud of creditors, but for the purpose of concealing the property from her trustee in bankruptcy when appointed, and her failure to schedule the property and disclose the facts might properly be held a concealment from her trustee while a bankrupt, within the true intent and meaning of the law. So had a creditor or creditors brought action to set aside this transfer of the Nantucket property because fraudulent as to creditors, and had such action been pending at the time the petition was filed, and had the bankrupt failed to disclose such facts—especially if the action had terminated in favor of the creditors—this court might properly hold that there was a concealment of property, within the meaning of the bankruptcy law. But in the case at bar Mrs. Dauchy, in 1898, transferred this property,

through Powers, to her son; and there being no proof of an agreement by which she retained an interest or was to have the income from the property, or any part of it, or a retransfer, or that she then contemplated bankruptcy, this court cannot find that she had any beneficial interest in this property, or that she concealed any property in which she had an interest from her trustee while a bankrupt. She had parted with it about three years before filing her petition in bankruptcy, and no creditor had questioned the title thus conveyed by her. Mrs. Dauchy could not recover the property or its possession. If she had made an agreement by which the property was to be reconveyed to her at a subsequent time, or by the terms of which she was to have an interest in the property or its income, she would have retained a beneficial interest. While it is true that she could not in such case, perhaps, have enforced this agreement, inasmuch as she made the conveyance in fraud of creditors, and would be compelled to come into a court of equity to enforce the agreement, in which case her grantee might plead the fraudulent transfer, and so defeat an enforcement of the agreement, still that would go to the remedy, and not to the fact that she had retained a beneficial interest in the property, in which case it would properly be held that she had an interest, and was guilty of concealment, within the bankruptcy law, by not scheduling the property and disclosing the facts. The difficulty in this case is want of proof showing such an agreement. The evidence is that there was no such agreement—that no reservation was made; and, inasmuch as the property was conveyed to a son but little accustomed to business, the mere fact that she has exercised some dominion over it, accompanied by some proof that she acted as agent, and not as owner, is not sufficient to establish a secret trust for her benefit.

The crucial question in this case is, did Mrs. Dauchy, at the time of the transfer to Powers, and through him to her son, retain any interest in this property, which she might have recovered for her own use or benefit in case the fact that she so conveyed it in fraud of her creditors was not pleaded or proven as a defense to her action or proceeding for such recovery? It is not shown that Mrs. Dauchy has alleged or claimed any ownership or beneficial interest in this property since the transfer through Powers to her son, and which transfer was made in 1898. There is some evidence that she has rented or procured the property to be rented in her own name as late as 1901, and that the rents were paid to her by check, which were indorsed by her to her husband, and the proceeds used by him almost exclusively and mainly for the benefit of the family, which family included the son. There is no evidence that the son has claimed to be the owner since 1898, or that he has exercised dominion over the property, or that he has been in possession of the same, or that he has received the rents or profits. Mr. and Mrs. Dauchy and the son all say that she was acting as agent for the son in doing all that she did do, and, even if we concede that she was a self-constituted and self-appointed agent, still we must assume this to be true, in the absence of proof that she retained some beneficial interest in the property or its proceeds. The son, as absolute owner, had

the right, if he saw fit, to allow his mother to rent the property in her own name and pay the rents to the father, and allow him to use the proceeds for his own benefit, or for the support of the mother and family. The facts are suspicious, and, as before stated, are morally convincing, but fall short of legal proof that a beneficial interest was reserved in Mrs. Dauchy when the transfer above referred to was made.

The words "any of the property belonging to his estate in bankruptcy" can hardly be held to include a right of action given to a creditor to set aside, as fraudulent as to him, a conveyance of property not made in contemplation of bankruptcy, but made without consideration and in fraud of such creditor. Again, how can the bankrupt conceal, while a bankrupt, property transferred before bankruptcy was thought of by him, and which he cannot recover from the vendee or control? The right of action was in the creditors, not the bankrupt. The title to the property had been transferred to the son. What property belonged to the estate in bankruptcy? How could the bankrupt conceal this real estate? The theory must be that a right of action given to creditors or to the trustee to recover property equitably belonging to the creditors is not disclosed by the bankrupt, and therefore he conceals property belonging to his estate in bankruptcy. But in the absence of a secret trust agreement by which the property, or some part of it or interest in it, is to be held by the fraudulent vendor or some trustee for the benefit of the bankrupt, no part of the property belongs to the estate in bankruptcy.

In Goldsmith et al. v. Goldsmith, 145 N. Y. 313, 39 N. E. 1067, a secret trust for the grantor was held established because there was proof that an agreement creating such a trust was made.

In Hudson v. Mercantile National Bank of Pueblo, 9 Am. Bankr. Rep. 432, 119 Fed. 346, it was held:

> Where it is shown that the bankrupt has either a resulting trust in land, which he failed to include in his schedules, or that his son, in whose name it stood, held it in secret trust for his father, the trust having been created to defraud creditors, the failure to schedule the land as part of his estate amounts to a concealment of assets, and sufficient ground, under section 14b of the bankrupt act, for refusing his discharge.

In re Quackenbush (D. C.) 102 Fed. 282, it was held:

> Where a debtor makes a voluntary transfer of his property, without consideration, to his wife, for the purpose of defrauding his creditors and placing the property beyond their reach, but continues always in the full use and enjoyment of the property, and the receipt of its rents and profits, and does not disclose the true facts regarding such property in his schedule in bankruptcy, or surrender it to his trustee, he is guilty of having "concealed, while a bankrupt, from his trustee, property belonging to his estate in bankruptcy," within the meaning of Bankr. Act 1898, § 29b, Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3433], so as to forfeit his right to a discharge, although the fraudulent transfer was made long before the passage of the bankruptcy act; for the concealment is continuous, and extends beyond the date of the adjudication in bankruptcy. The bankrupt is none the less guilty of "concealing" such property because the facts and circumstances relating to the fraudulent transfer were, upon the bankrupt's examination, made known to the trustee or the creditors, the essence of the offense being the placing of the property in such a situation that the trustee cannot reach it, with the intent on the part of the bankrupt not only to keep it from the

. . 122 FEDERAL REPORTER.

creditors, but to enjoy it himself; nor is it material that the concealment proves unsuccessful, or that the trustee may recover the property for the benefit of the estate.

Other cases well hold that where a person, prior to filing a petition in bankruptcy, conveys property to a third person, to be held, in whole or in part, in secret trust for himself, and fails to schedule such interest, such failure constitutes a knowing and fraudulent concealment from his trustee, while a bankrupt, of property belonging to his estate in bankruptcy. In re Welch, 3 Am. Bankr. Rep. 93, 100 Fed. 65; In re Bemis, 5 Am. Bankr. Rep. 36, 104 Fed. 672; In re Becker, 5 Am. Bankr. Rep. 438, 106 Fed. 54.

In Bragassa v. St. Louis Cycle, 5 Am. Bankr. Rep. 700, 107 Fed. 77, the bankrupt, before the enactment of the bankruptcy law, to keep his money and earnings from his creditors, deposited same in banks to the credit of his wife, but he had the use of same. Passbooks were issued to him, and he drew checks in her name, and continued this after his bankruptcy. Held, properly, he was concealing property that belonged to his estate in bankruptcy. He did not give this money to the wife; did not put it within her control or power of disposition. Really, while he kept the money in bank in her name, he had it at his disposal at any moment, and always within his control.

In Fields v. Karter, 8 Am. Bankr. Rep. 351, 53 C. C. A. 432, 115 Fed. 950, it was held:

Where the testimony of the bankrupt, upon which a creditor opposing his discharge upon the ground that he had concealed, while a bankrupt, from his trustee, property belonging to his estate, relies, clearly shows that all the transfers and concealments of which the creditor complained were of record and antedated the adjudication in bankruptcy more than a year, the specifications in opposition will be overruled, and the discharge granted.

In Re House, 4 Am. Bankr. Rep. 603, 103 Fed. 616, held:

The omission from the bankrupt's schedules of a gift made by him to his wife prior to the enactment of the bankruptcy law, which gift was in fact in fraud of the right of creditors, is not a ground for opposition to discharge.

See, also, In re Countryman (D. C.) 119 Fed. 639.

In Re Fitchard, 4 Am. Bankr. Rep. 609, 103 Fed. 742, held:

The bankrupt, having failed long before bankruptcy, with judgments against him, transacted business thereafter in the name of his wife for the purpose of preventing creditors from reaching the avails of his labor. His services were rendered to his wife gratuitously. Held not to be such fraudulent concealment as would bar a discharge.

See, also, In re Skinner, 3 Am. Bankr. Rep. 163, 97 Fed. 190; In re Crenshaw, 2 Am. Bankr. Rep. 623, 95 Fed. 632; In re Schreck, 1 Am. Bankr. Rep. 366; In re McNamara, 2 Am. Bankr. Rep. 566; In re Cornell, 3 Am. Bankr. Rep. 172, 97 Fed. 29.

In Re Cornell the headnote is:

Discharge. Where it is objected to a bankrupt's application for a discharge that he is concealing property from his trustee, the objecting creditor must support his specifications by proof of the existence of property in the bankrupt, or in trust for his use, at the time of the commencement of the bankruptcy proceeding.

Many other cases might be cited in which we find an apparent conflict of opinion and decision. In truth, care has not been taken

to point out or observe the distinction between transfers merely colorable, the bankrupt retaining control and possession, and those where possession and control were parted with; those cases where there was an absolute deed of conveyance of real estate, with no trust agreement, and those where there was such a deed, with a trust agreement retaining some interest in the property in the vendor. It cannot be that the amendment of 1903 has broadened the power of bankrupts to cheat and defraud creditors, and still secure a discharge, which must be the case if before such amendment a fraudulent transfer at any time prior to the filing of the petition amounted to a concealment of property belonging to the estate in bankruptcy, while now such fraudulent transfer must occur within the four months preceding the filing of the petition.

This court holds that in all cases of bankruptcy commenced prior to February 5, 1903, a transfer of real estate by deed absolute upon its face, made without consideration, and not limited by an agreement retaining some interest in the grantor, there was, as to such property, no concealment while a bankrupt from the trustee of any of the property belonging to the estate in bankruptcy. To hold otherwise is to juggle with the meaning of words, and import something into the law not found there prior to the amendment of 1903.

The invalidity of these secret reservations for the benefit of the grantor in cases of conveyances absolute on their face is recognized in Lukins v. Aird, 6 Wall. 78, 18 L. Ed. 750, where it is held:

A debtor in failing circumstances cannot sell and convey his land, even for a valuable consideration, by deed without reservations, and yet secretly reserve to himself the right to possess and occupy it, for even a limited time, for his own benefit. Nor will this rule of law be changed by the fact that the right thus to occupy the property for a limited time is a part of the consideration of the sale, the money part of the consideration being on this account proportionably abated.

See, also, Wooten v. Clark, 23 Miss. 75; Arthur v. Com. & R. Bank, 9 Smedes & M. 394; Towle v. Hoit, 14 N. H. 61; Paul v. Crooker, 8 N. H. 288; Smith v. Lowell, 6 N. H. 67.

This court fully recognizes the rule of evidence that in cases of this kind, as in others, the existence of the main fact to be proved may be established by inference from other facts proved, when such inference is legitimate. But when from such other facts proved two or more inferences may be drawn, and the facts point as clearly to the one result as to the other, the court cannot say a case is made out. It is not necessary to detail the facts in regard to the other property in question—that at Lansingburg, N. Y.—as the proof relating to that is much the weaker. This court has held (In re Leslie, 119 Fed. 406), and holds, that the concealment of property in these cases need only be shown by a fair preponderance of satisfactory evidence. This is not a criminal proceeding, in any sense. This court has not been moved by a consideration for either the alleged poverty or misfortunes of the Dauchy family, or any member of it, or by the circumstances that gave rise to the claim of the objecting creditors against the bankrupt. Mrs. Dauchy indorsed the note, and is liable on the judgment. This property ought to have been applied

to its payment, but that is not the question here. A secret trust has not been proved. No substantial evidence has been given that the bankrupt has knowingly and willfully made a false oath in these proceedings. As it is not proved that she concealed property, the allegation of having made a false oath falls.

The result is that the report of the referee must be confirmed, and the bankrupt discharged. It is so ordered.