## In re HAMMERSTEIN.

(Circuit Court of Appeals, Second Circuit.   May 8, 1911.)

No. 256.

1. BANKRUPTCY (§ 413*)—DISCHARGE—EFFECT OF ABANDONMENT OF OPPOSITION BY CREDITORS.

Where the discharge of a bankrupt was opposed by creditors on the ground that he defrauded them, the fact that they have abandoned their opposition is entitled to consideration by the court.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 413.*]

2. BANKRUPTCY (§ 408*)—DISCHARGE—GROUNDS FOR REFUSAL—"CONCEALMENT."

In order to establish a fraudulent "concealment" by a bankrupt of property belonging to his estate from his trustee, which will deprive him of his right to a discharge under Bankr. Act July 1, 1898, c. 541, §§ 14b (1), 29b (1), 30 Stat. 550, 554 (U. S. Comp. St. 1901, pp. 3427, 3433), it must appear that the property in fact belonged to him at the time of the bankruptcy. The fact that it had previously been fraudulently transferred, if the transfer was actual, and not colorable, and placed it beyond the reach of the bankrupt, is not made by the act a ground for refusing a discharge.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 408.*

For other definitions, see Words and Phrases, vol. 2, pp. 1377–1384.]

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of Malvina Hammerstein, bankrupt. From an order denying a discharge, the bankrupt appeals. Reversed.

Malvina Hammerstein filed a voluntary petition in bankruptcy October 24, 1901, and was adjudged a bankrupt the next day, October 25, 1901. On January 22, 1902, she filed a petition praying that a discharge in bankruptcy be granted her. By an order made January 23, 1902, a hearing on said petition was fixed for February 3, 1902. Specifications of objection to a discharge were filed by two of her creditors. The issues on said specifications were then referred to the referee in bankruptcy, as special commissioner, to ascertain and report the facts. On January 19, 1903, he filed a report stating that in his opinion a discharge should be denied and an order was entered on the 20th day of November, 1909, confirming this report and denying a discharge. From this order the bankrupt appeals.

Thomas & Oppenheimer and Frederick L. C. Keating, for the bankrupt.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge (after stating the facts as above). [1] No one appears for the opposing creditors upon this appeal, from which it may be inferred either that they have become convinced that the discharge should be granted or that they have now no interest in opposing it. The creditors' withdrawal from the case should have no weight if the court be clearly convinced that the bankrupt has committed the alleged frauds. If, however, there be doubt as to her guilt, the fact that those most interested have ceased to oppose the discharge may properly be considered. A discharge is granted to an honest

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

bankrupt in order that he may reinstate himself in the business world; it is refused to a dishonest bankrupt as a punishment for his fraud and to prevent its continuance in the future. In a sense the question has passed beyond the creditors and is one of public policy, but when the charge is that the bankrupt has defrauded his creditors the fact that they have ceased to assert their charge cannot be wholly ignored by the court. The controversy must be considered under the law as originally passed, for the reason that all the acts complained of took place prior to the amendments of February 5, 1903.

[2] Section 14b of the act provides that the judge shall discharge the bankrupt "unless he has (1) committed an offense punishable by imprisonment as herein provided." Section 29b of the act provides that:

"A person shall be punished, by imprisonment for a period not to exceed two years, upon conviction of the offense of having knowingly and fraudulently (1) concealed while a bankrupt, or after his discharge, from his trustee any property belonging to his estate in bankruptcy."

Several specifications were assigned which were found in favor of the bankrupt, others were not passed on by the special commissioner and still others were abandoned. Those which were found against the bankrupt and which are now in controversy are as follows:

"First.—That the bankrupt, knowingly and fraudulently concealed, etc., from her trustee property belonging to her estate. * * * (b) Her furniture, enumerated in a bill of sale made by bankrupt to said Raphael, now in her possession, subject to no lien. (c) $31,638.25 cash, amount of a judgment recovered by James Allison against the New York Life Insurance Company for the value of the interior furnishing of the Victoria Theater, which property has been conveyed by the bankrupt to one Amanda Lissner, by whom it was conveyed to said Allison, the said transfers being colorable only and the said sum still being part of the bankrupt's estate."

The question, then, is whether the bankrupt in October, 1901, after her petition was filed, committed the offense, punishable by imprisonment, of having knowingly and fraudulently concealed from her trustee property belonging to her estate?

The commissioner prefaces a carefully prepared review of the facts bearing upon the two specifications sustained by him with the following statement:

"The testimony as to these transactions is voluminous, involved and more or less conflicting, but upon careful perusal seems to me to establish substantially the following facts."

He also says regarding the principal transaction of which fraud is predicated:

"It is possible that these transactions may have been in good faith and that other parties, namely the Hammerstein Amusement Company and Allison may have taken the opportunity to benefit themselves at the expense of the bankrupt."

In both of these statements the commissioner is correct. The evidence, undoubtedly, is conflicting and it is possible to draw therefrom a conclusion that the bankrupt has not committed the offense charged. It will serve no useful purpose to discuss the testimony in detail.

The difficulties which led up to the bankruptcy of the appellant grew out of the desperate financial condition in which her husband, Oscar Hammerstein, was involved, during the time in question. Resort was had to every expedient to secure money to satisfy his creditors and save the valuable property on Broadway which was mortgaged for $900,000—foreclosure of the mortgage being threatened. Under the stress of these difficulties many acts were done which are open to severe criticism and transfers were made which were probably fraudulent as to creditors. That the bankrupt was the tacit instrument by which many of these questionable transfers were made cannot be denied. That she had a clear understanding of the transactions, acting as she did by the request and procurement of her husband, is doubtful.

It must be remembered that this is not a proceeding to set aside a fraudulent conveyance. It may be assumed that all of the transfers were fraudulent as to creditors and it would not, under the bankruptcy law of 1898, prevent a discharge. The foundation of the charge is concealment of the bankrupt's property. If the bankrupt has conveyed it, no matter how fraudulently, so that he has lost all right, title and interest therein, it is not a concealment under the provision of the act referred to. If the bankrupt has parted with all dominion over the property, if the title is gone out of him and is beyond recall, it is not his property, and therefore is not "property belonging to his estate in bankruptcy."

We are of the opinion, as to the great bulk of the property in question, that it is by no means clear that Mrs. Hammerstein ever owned it, but if she did the title was not in her at the date of the bankruptcy and could not be resumed by her. The authorities bearing upon this question will be found in Re Dauchy (D. C.) 122 Fed. 688. In affirming the opinion of the District Judge this court said:

"The principal accusation of fraud is based upon the conveyance by the bankrupt of the Nantucket property to her father and by him to her son over two years prior to the adjudication in bankruptcy. At the time the petition was filed and the schedules verified, the legal title to this property was not in the bankrupt and had not been for two years and seven months. The transfer to her son, conceding it to be fraudulent as to then existing creditors, has not been made by the act a sufficient ground for refusing a discharge. About this there is no disagreement. In order to establish a fraudulent concealment it must appear that the property concealed belongs to the bankrupt's estate. It must be shown that the transfer was merely a temporary expedient to place the property beyond the reach of the trustee, the title to be resumed by the bankrupt as soon as prudence will permit. In other words, it must be proved that a secret trust exists in her favor and that her son is under agreement, expressed or implied, to reconvey the property to her when the danger of attack by the creditors has passed." In re Dauchy, 130 Fed. 532, 65 C. C. A. 78.

We think the order should be reversed, and a discharge should be granted.