## In re GLICK BROS.

(District Court, N. D. Texas. September, 1924.)

No. 1838.

1. **Bankruptcy** &#8594;413(½)—**Creditors' withdrawal of opposition to discharge does not warrant discharge, if court is convinced bankrupt has committed fraud.**

That creditors have withdrawn opposition to discharge does not justify discharge, if court is convinced that bankrupt has committed fraud.

2. **Bankruptcy** &#8594;413(½)—**Bankrupt held not entitled to discharge, notwithstanding withdrawal of creditors' opposition.**

Under Const. art. 1, § 8, cl. 4, and Bankruptcy Act (Comp. St. §§ 9585–9656), right to discharge accrues only on complete surrender and exposure of financial condition, and where bankrupt partners scheduled indebtedness in excess of $42,000, and listed as sole assets $776.08, and at same time, as found in separate action, fraudulently continued former business as going concern in name of corporation purporting to be owned by their mother and sisters, *held*, discharge was unwarranted, notwithstanding withdrawal of creditors' objections.

Order affirmed, 4 F.(2d) 151.

Davis, Johnson & Handley, of Dallas, Tex., for bankrupt.

ATWELL, District Judge. On January 5, 1923, Moses Glick and Lewis Glick, as partners, trading under the name of Glick Bros., filed an application in voluntary bankruptcy. They scheduled $42,776.59 indebtedness. They did not list a penny of assets, save $776.08 as the matured value of certain life insurance policies, which they had hypothecated to their attorneys, Davis, Johnson & Handley. Their indebtedness was for goods and merchandise and money used by them in their ladies' ready to wear business on Elm street, in Dallas, Tex.

At the time of the filing of the petition Glick Bros., Inc., was a going concern in the same place and in the same business that the partnership had engaged in and used. The identical fixtures and furniture and more or less of the stock was in the hands of the new concern. While the bankruptcy was pending the trustee of the estate instituted, in the United States District Court at Dallas, a suit, which was tried before me, against the corporation, in which it was

claimed that there was taken from Glick Bros., the partnership, a large sum of money, and used through the name of the mother and two sisters of Glick Bros., for the alleged purpose of paying for the stock in the corporation which took over the partnership business.

After a careful trial and the hearing of the mother and sisters and brother-in-law, and many other witnesses, I found that the stock which stood in the name of the mother, amounting to forty-odd hundred dollars, was in fact the stock of Glick Bros. The testimony in that case developed that money that came from the sales of the partnership was hidden by the bankrupts through the activities of one Sharpstein, a brother-in-law, and subsequently passed into the books of the corporation as though it had been paid in by the mother. I was fully convinced of the fraud.

After the rendition of the judgment, which vested the stock of the corporation in the trustee, the mother arranged to and did pay to the trustee the par value of the stock for the use and benefit of the creditors. This amounted to $4,315.

On March 30, 1923, Glick Bros., the partners, filed their application for a discharge. On April 17, 1923, the creditors, who had theretofore interposed an objection to the discharge of the bankrupts, through their attorney, prayed that they be allowed to withdraw their opposition to the discharge. The second paragraph of their opposition read as follows:

"Because said bankrupts have, subsequent to the first day of the four months immediately preceding the filing of the petition herein, concealed a part of their property and permitted the same to be concealed, with intent to hinder, delay, and defraud their creditors in that, about February 15, 1922, the said bankrupts did, for themselves, incorporate and charter a certain Texas corporation called Glick Bros., Inc., and did themselves pay for the stock of said corporation out of such bankrupt business, and have ever since been the owner of said corporation and its stock and assets, having used the names of their mother and two sisters as a means of concealing their ownership thereof, and immediately thereafter transferred all their assets, consisting of a valuable real estate lease, valuable furniture, and permanent fixtures, a valuable stock of merchandise and cash on hand, all of a value in excess of sixty thousand dollars ($60,-000), to such corporation for a consideration of eight thousand dollars ($8,000), paid by bankrupts and said business, and did, within the period of four months next preceding the filing of this petition, as aforesaid, conceal such assets and the truth of said transaction and permit the same to be concealed by their said mother and sisters in this; that during said four months they did represent that said corporation belonged to their mother and sisters, and that all said property belonged to said corporation, and that they and said estate had no assets, and did fail and refuse to schedule the said assets, consisting of said lease and said furniture and fixtures and merchandise and money in their schedules filed herein, but did falsely and fraudulently state in said schedules that none of said property belonged to said bankrupt partnership or to either of said partners, and did falsely represent and state, and cause said other parties to represent and state, that said bankrupt partnership and said bankrupt individual partners were all without any assets whatever, when in truth and in fact said partners were then and are now in business, using all said original assets, and the rent, revenue, and increase of the same, and in truth and in fact then owned and do now own the same of a value in excess of sixty thousand dollars ($60,000)."

The application to withdraw the opposition and to accept the $4,315 cash for the stock which was recovered, as referred to above, in part, read as follows:

"Your petitioner shows that heretofore he caused to be filed herein in the name of Butler Bros., Higginbotham Millinery Company opposition to the discharge of the said Glick Bros., and Moses Glick and Lewis Glick, bankrupts, and in due course filed their specifications of objections to said application for discharge; that the attorney representing said objecting creditors is the same attorney who has represented your petitioner in these matters, and who is filing this petition, joins herein on behalf of said objecting creditors; that as a part of her offer for said shares of stock said purchaser made it a condition that said opposition to said discharge should be withdrawn, and your petitioner shows to the court that while said opposition was made in good faith, and your petitioner believes on ample ground, if he does not concede to said request, he cannot now sell said stock for par, or anything like par, and that for him to retain stock and hold it for the benefit of creditors would not be practicable at all, and therefore it is worth much more to all creditors concerned to withdraw said opposition and

accept said offer of money and close this estate, than to refuse to accept the same on condition that said opposition be withdrawn.

"Wherefore your petitioner prays that he be allowed to sell said shares of stock and to convey the same in consideration of four thousand three hundred fifteen dollars cash, and that said objecting creditors, through their attorney, J. H. Synnott, be allowed to withdraw their said opposition to said application to discharge, and for such other and further relief that may be right in the premises."

It will be noticed that the mother paid par for the stock on the condition "that the opposition to the discharge be withdrawn." Clearly a trade between the creditors and the bankrupts. The referee thereupon recommended that they be discharged.

The certificate which this court is asked to sign contains the following words:

"Whereas, Glick Bros., a copartnership composed of Moses Glick and Lewis Glick, has been duly adjudged a bankrupt, under the acts of Congress relating to bankruptcy, and appears to have conformed to all the requirements of law in that behalf."

I cannot sign such a certificate. They do not appear to have conformed to all the requirements of the law. They sought to defeat the law—to defraud their creditors. I have never seen a more flagrant attempt to appropriate everything than this case exhibits. In the schedule of assets they swear that they have nothing—a custom that has grown entirely too common with bankrupts.

[1] The fact that creditors may have withdrawn their opposition will not prevent the court from denying a discharge when the facts justify such action. If the court is clearly convinced that the bankrupt has committed the alleged frauds, then he will deny a discharge, even though no creditor is asking for such action. In re Hammerstein (C. C. A. 2d Cir.) 26 Am. Bankr. Rep. 757, 189 F. 37, 110 C. C. A. 472.

[2] A discharge is a valuable right, but the right does not exist when there has not been a complete exposure of the bankrupt's financial condition and a complete surrender. The right of discharge ripens only through fulfillment of the law. The fact that the mother of the Glick brothers, made a contingent offer for the purchase of the stock which the trustee had recovered, such contingency being the withdrawal of opposition to their discharge in bankruptcy, cannot be a bar to this action by this court. The referee, in allowing the creditors to withdraw their opposition, may not be said to have made the court a party to any such agreement.

Unlike ordinary litigation, the public has an interest in bankruptcy proceedings. The Constitution (article 1, § 8, cl. 4) furnishes the basis for the Bankruptcy Act (Comp. St. §§ 9585–9656), which the Congress passed. By the authority of such fundamental law the people assumed the right to release a debtor from everything that he owed. This release is given, whether the creditors are satisfied or not. Therefore the people, public policy, the courts, are vitally interested in the cleanliness and in the completeness of the surrender of every person who seeks to take advantage of this wholesome law; and it is in deference to this interest, and the necessity of keeping it quick, that I refuse to allow the withdrawal of the creditors' opposition to work a discharge for these bankrupts.

The recommendation of the referee is overruled, and the discharge of Glick Bros., partnership and individually, is denied.