### In re SMATLAK et al.

### REZABEK v. SMATLAK et al.
### No. 6644.

Circuit Court of Appeals, Seventh Circuit.
Oct. 28, 1938.

---

[1] In re Loeb Apts., Inc., 7 Cir., 89 F.2d 461; In re A. C. Hotel Co., 7 Cir., 93 F.2d 841.

George B. Cohen, of Chicago, Ill., for appellant.

Otto L. Kolar, of Chicago, Ill., for appellees.

Before EVANS, MAJOR, and TREANOR, Circuit Judges.

EVANS, Circuit Judge.

Joseph Rezabek, a creditor, assails the discharge in bankruptcy of Rudolph and Marie Smatlak, individually and as co-partners, who are husband and wife. Rudolph went through bankruptcy some nine years ago, but he did not then seek a discharge of his debts.

The issues were referred to a special master who filed an exhaustive report wherein he recommended the discharge. The court confirmed the report and the discharge was granted.

The objector accuses bankrupts of (a) having knowingly and fraudulently failed to schedule real property belonging to them, and (b) with having made false oaths in reference to their schedules, etc.

The referee's report is attacked because in reaching his conclusion he placed the burden of proving the concealment of assets, and false statement in reference thereto, upon the objector. With frankness and candor, referee stated how he reached his conclusion. We quote therefrom:

"The burden of proof herein rests upon the objecting creditor. He must show by clear and satisfactory evidence that the bankrupts are the real owners of the properties involved herein or that they have a secret interest in such properties."

In support thereof, he cited In re Dauchy, D.C., 122 F. 688, Id., 2 Cir., 130 F. 532. He further said:

"There are many suspicious circumstances in this case. The testimony of the bankrupts' daughter Lillian Blanche was not, to my mind, altogether satisfactory. In some particulars, her testimony was vague, uncertain and contradictory. * * As above stated, there are many inconsistencies shown in the testimony of the bankrupts and their children * * * and the inconsistencies found herein—such as they are—cannot, to my mind, take the place of proof by the objecting creditor that the bankrupts have, in fact, a secret interest in the various properties. The burden is upon the objector to show such secret interest and, in my opinion, he has not done so.

"I have given this case my most thoughtful consideration, and I cannot say that the bankrupts' explanations are altogether unsatisfactory or that a case has been made out by the objecting creditor, even though I may still have some suspicions, in my mind, about the bona fides of some of the transactions, but suspicions cannot take the place of proof."

In 1926, after the announcement of the above cited In re Dauchy opinion, subsection 7 of section 14b of the Bankruptcy Act was amended, 11 U.S.C.A. § 32(c) (7), to read as follows:

"Provided, That if, upon the hearing of an objection to a discharge, the ob--

jector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed any of the acts which, under this paragraph (b), would prevent his discharge in bankruptcy, *then the burden of proving that he has not committed any of such acts shall be upon the bankrupt."*

The italicized words constitute the amendment. The referee discussing this amendment said:

"I am not unmindful of the fact that by the amendment of 1926 to the National Bankruptcy Act, it is provided that if upon the hearing of an objection to a discharge, the objector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed an act which would bar his discharge, then the burden of proving that he has not committed such act shall be upon the bankrupt. Yet, as stated by Remington (paragraph 3410.50) it is difficult to see where such amendment adds anything to the rules of evidence already existing as to discharges. The opposing creditor has the burden of proof as to each element necessary to be proved. Thus, where the ground of opposition is the commission of the crime of concealing assets, each element of the crime must be proved and be proved by the requisite degree of proof. Remington on Bankruptcy, paragraph 3408."

It is apparent from a reading of the referee's report that he misconstrued and misapplied subsection 7. The amendment was enacted for some purpose, and we must give to it some effect. The referee evidently concluded the amendment did not change the existing law, and the objector, not the debtor, carried the burden throughout.

The proper construction of this statute as amended calls for the objector to assume the burden, in the first instance, and to show "reasonable grounds for believing" that the bankrupt had made a false statement in respect to his assets. His burden is not to prove the fraudulent concealment of assets or the false oath by bankrupt. He must show only that there are *reasonable grounds for believing* the existence of facts which bar a bankrupt's discharge.

When the objector has shown to the satisfaction of the court the "reasonable grounds for believing," the burden then shifts to the bankrupt to prove that he has not committed the acts charged in the objection.

The expression "to the satisfaction of the court" does not leave it to the whimsical or capricious judgment of the fact finder, but supplies a test or standard of persuasiveness which has a well-accepted meaning. Shanberg v. Saltzman, 1 Cir., 69 F.2d 262.

The question before us is therefore narrowed to an inquiry into the facts to ascertain whether a *"reasonable ground for believing"* has been shown. If so, then the referee erred in continuing to place on the objector the burden of showing "by clear and satisfactory evidence that the bankrupts are the real owners of the property" or as he stated in another place, "The opposing creditor has the burden of proof as to each element to be proved. Thus, where the ground of opposition is the commission of the crime of concealing assets, each element of the crime must be proved and be proved by the requisite degree of proof."

A study of the evidence leaves no doubt as to the showing of *"reasonable ground for believing"* that false testimony was given and property left out of the bankrupts' schedules.

Four pieces of property were involved. Parcel one is an improved property, a large brick building, with a tavern and dance hall and three floors containing twenty rooms used as a rooming house. The property originally stood in the name of bankrupt, Marie Smatlak, and was acquired in 1925. In 1927, she conveyed it to Stella Targos, and on foreclosure sale, it was in 1929, returned to Marie Smatlak.

In 1930 it was conveyed by Marie Smatlak and her husband to Rudolph Janek, who held the property until January 5, 1935, when he conveyed it to Blanche Ann Smatlak, a daughter of bankrupts. Blanche was at the time about twenty-three years of age, and was employed in a beauty parlor establishment. The property was worth $20,000. She paid Janek the sum he had put into the property when he acquired it from her mother, so bankrupts assert, and to do so she borrowed from one Jirka. Blanche rents the property to her mother for $100 per month. Neither Janek nor Jirka appeared. Objector claims Janek is a mythical character who never existed and seven witnesses gave

testimony which supported this opinion. Rezabek lent money to the bankrupts so that they might send their boys to college.

As to the other parcels, it is sufficient to say that parcel four was conveyed to the son John, September 15, 1930, when he was 19 and title remained in him until February 24, 1932, when he transferred it to his sister who was then 17 years of age.

Parcel number two stood in Marie Smatlak's name on April 10, 1928, and she conveyed it to one Puzej and Puzej, on July 11, 1931, conveyed it to Blanche Lillian Smatlak who was then 18 years of age or less. A month later the property was conveyed by Lillian to Rudolph Janek, the alleged mythical character, and the title stood in his name at the time of the bankruptcy proceedings.

Title to parcel No. 3 reached John R. Smatlak, the son, August 27, 1930, from one Felix Las in exchange for certain property given to John by his mother. John was a minor attending school.

Title remained in John until April 24, 1932, when he conveyed it to his sister who was 17.

All the properties have been handled by bankrupts during all this time as though they owned them. The insurance was payable to the bankrupts. The interest and principal payments on the mortgages were made by bankrupts.

In July, 1936, the father testified that Blanche was 25 years old. In July, 1937, the brother testified that his sister, Blanche, was then 24, and his sister Mildred was 21. Mildred, who received her property shortly before she was 17, stated that she had worked as a grocery clerk for three years prior to that time. Her brother stated she worked for one year.

The conveyance of parcel two to Blanche and her conveyance to Rudolph Janek were both during her minority. Both daughters testified that they obtained the cash with which to make payments from boxes wherein they kept their savings. No papers, checks, leases, or other written documents corroborate their testimony. The testimony given by daughter Blanche is illuminating except as to her age. She says:

"My name is Lillian Blanche A. Smatlak * * *. I own the equity of 2860 West Cermak Road and acquired it through Mr. Janek. I gave him $3,000.00 for it. * * * I lease the store to John. I have a written lease with my father but I think John's lease has run out. I had transactions with Janek in 1931 covering some of the lots in question here. I use the two names, Blanche and Lillian because I work in a Jewish neighborhood and whenever anything happens in the shop they are always ready to sue and so I use two different names over there. I got the lots in 1931 from Mr. Puzej. I do not remember how much I paid him. I don't know where he got it. I do not know whether he got it from my mother or not. Janek is over 40 years of age. He does not speak very well. * * * He did not leave his address when he left. I made no effort to find him. I do not know his business. * * * At the time I took the property from Janek I had no contract in writing. My father and brother handled the transaction. * * * The money I received from my mother I put in the property paying taxes and repairs, and I also paid the Building Loan. I am in arrears with the Building Loan. I do not know how I stand. My sister takes the money down or I go myself. * * * I did not handle the transaction regarding the mortgage. My brother did. I do not know what the situation is. * * * In 1931 I sold the lots to Janek for a couple of hundred dollars. I do not know how much money I had at the time I purchased these lots. My father brought the paper over to me. On the former hearing of this case on the examination I testified that my father brought the paper over. * * * I also testified on the former hearing I did not know what papers I signed. * * *"

Equally illuminating as to character and dependability is the testimony of bankrupt, Rudolph. He at the same time effectually disposed of the testimony of his wife, his co-bankrupt. He said:

"I brought in Mr. Lukes in 1930. Lukes had an unrecorded deed. My wife was involved so we thought we would convey it to Lukes. The Building Loan would not take Lukes so my wife's cousin, Rudolph Janek stepped in. We were warned not to put anything in the paper about Janek * * *. That was the reason Janek's name had to be kept off the records. * * * Janek has the title to one of the lots in Cicero that came to him from Blanche Lillian. He still has it because Blanche probably owes him some

money. \* \* \* My wife was all mixed up when she was examined here. \* \* \* She did not know what she was talking about."

Objector openly charged that Rudolph Janek was a mythical personage and yet was the medium by which bankrupt, Marie Smatlak, transferred property owned by her to her daughter. Witnesses said there was a party by that name, a brother of bankrupt Marie Smatlak, who lived in the "old country."

The objector Rezabek, who is also a Bohemian, testified that Janek is "short for John" and that bankrupt Rudolph Smatlak called his son Janek. Supporting this charge that Janek was a fictional character were seven witnesses, one a brother of the bankrupt and others quite familiar with the home life of the bankrupts at whose house, so bankrupts assert, Janek stayed for some time. Their testimony was negative in that the seven witnesses stated they never saw him at the house or elsewhere. In opposition thereto, besides the testimony of the bankrupts, there were two witnesses who stated that they witnessed his signature to a deed. However, these parties said they were introduced to him and did not know of their own knowledge the party introduced was Rudolph Janek.

The hearings before the master were continued several times and covered a considerable period. Neither Janek nor Jirka were produced at any hearing. Their absences were unexplained, save Rudolph said Janek "got mad and went to Wisconsin."

From the foregoing it must appear that the objector established a clear case of "reasonable ground for believing" the existence of fraudulent concealment, and the burden was then transferred to the bankrupts to prove that no omissions were made by them in their inventories.

What the referee's findings would have been had the burden been properly placed —on the bankrupts—only the referee can say. We can not. He should be permitted to make findings with the burden of proof on the bankrupts. He has frankly expressed himself as being in deepest doubt even with the objector unduly loaded with a heavy burden and with the bankrupts relieved of the load which the law placed upon them. We deem it best to permit the master to make new findings after placing the burden where it belongs. In so doing,

the referee should be permitted to investigate further the existence of Janek and in fact insist that Janek's identity be established or disproved and not left to conjecture, fancy or suspicion. At the same time he may receive any other evidence which may throw light on the controverted question.

The order is reversed with costs with directions to proceed as herein indicated.