## In re LOWENSTEIN.

(District Court, S. D. New York. May 1, 1899.)

BANKRUPTCY—DISCHARGE—FRAUD.

Where a bankrupt knowingly and fraudulently makes a false oath that his wife owned his stock of goods, and intentionally omits to list such stock, fixtures, and the good will of the business as part of his assets, he is not entitled to a discharge from his debts, though such assets are not sufficient to pay the expenses of the proceeding.

Application by Henry Lowenstein for a discharge in bankruptcy. Report and opinion of George C. Holt, Referee:

The issues on the specifications of grounds of objection to discharge having been referred to me to ascertain and report the facts, and the respective counsel for the bankrupt and the opposing creditor having duly appeared before me upon due notice, and having taken certain testimony, in addition to testimony previously taken in this proceeding, and a copy of said testimony, duly signed by said bankrupt, taken December 27, 1898, February 2 and April 10, 1899, being returned herewith, and the matter having been submitted upon briefs by Sol. Oppenheimer, Esq., counsel for Max Hirshkind, objecting creditor, and by Henry Gottgetreu, Esq., counsel for the bankrupt, and due deliberation having been had, I hereby report that the facts relevant to the objections filed are as follows:

1. The first objection filed charges, in substance, that the bankrupt is the owner of a merchant tailoring business at 776 Lexington avenue, New York, and omitted to include in his schedules the good will of the business, the stock of goods, fixtures, and materials in the store. The second objection charges that the bankrupt destroyed, concealed, or failed to keep books of account. The specifications from the third to the ninth, inclusive, have been previously ordered to be treated as one, and the charge, in substance, as I understand them, is that the bankrupt has testified falsely in testifying, in substance, that the business which he purchased from Hirshkind was subsequently transferred to his father-in-law, and that the business which he was conducting at the time he filed his petition in bankruptcy was owned by his wife, and in denying that he in fact owned the said business.

2. In respect to the objection that the bankrupt did not keep books of account, the fact was that he did not keep such books; but I do not think that the evidence established that he failed to keep such books with fraudulent intent to conceal his true financial condition, and in contemplation of bankruptcy. His business, since July 1, 1898, has been that of a merchant tailor, doing a very small business, carried on by himself with the assistance of a boy. I think that the evidence tends to show that he omitted to keep regular books of account in order to avoid the trouble of keeping them, rather than with fraudulent intent to conceal his true financial condition and in contemplation of bankruptcy.

3. The substantial ground of objection to the bankrupt's discharge in this case is, in substance, that he knowingly and fraudulently made a false oath or account by verifying schedules which did not contain a statement of the goods, fixtures, and materials in the store at 776 Lexington avenue. The bankrupt inserted in his schedules of assets two pairs of shears, valued at $3, and a measure, valued at $3; so that his attention was called to the question whether he should insert the goods, fixtures, and articles at his store. He omitted to insert them on the ground that the merchant tailoring business there conducted, and the goods, fixtures, and materials at the store, were owned by his wife. The evidence shows that about February, 1895, Max Hirshkind, Victor Lowenstein, and Henry Lowenstein were partners in the merchant tailoring business, in Sixth avenue. At that time Henry Lowenstein purchased the business, and carried it on in Sixth avenue about three months, until the 1st of May, 1895. He then removed to 984 Third avenue, taking with him the stock at the Sixth avenue store. He carried on the merchant tailoring business at Third avenue until about September 1, 1896, at which time he executed and delivered a bill of sale of the business to his father-in-law. The alleged consideration of this bill of sale was $1,000, due for money alleged to have been previously loaned. Hirshkind at that time was suing him upon a note given upon the purchase of the previous business, and Lowenstein stated, in substance, to a man named Schlessinger, that the bill of sale was made to protect the merchandise creditors and prevent Hirshkind from seizing the merchandise in the store. The business was continued by Henry Lowenstein at Third avenue until about June, 1898, when he left that place of business, and a week or two later opened a small shop at 776 Lexington avenue, where he has since done business. He claims that the business at 776 Lexington avenue is owned and carried on by his

wife, but there is no evidence that the wife ever contributed any capital or has ever taken any part in the business. There is nothing in the sign or letter head to indicate that she has any interest in the business. In my opinion, the bill of sale executed to the father-in-law in 1896, and the claim that the business at 776 Lexington avenue is carried on by the wife, were mere fraudulent attempts by the bankrupt to put his property out of the reach of his creditors; that the business has been in fact owned and conducted by the bankrupt ever since he made the purchase from Hirshkind; and that the good will, goods, fixtures, and materials at the store in Lexington avenue at the time the bankrupt filed his petition in bankruptcy belonged in fact to the bankrupt.

The counsel for the bankrupt relies upon the cases of Knapp v. Smith, 27 N. Y. 277, Buckley v. Wells, 33 N. Y. 517, and Smith v. Van Olinda, 48 N. Y. 169, to support his claim that the business was owned by the bankrupt's wife. In all these cases the wife did something, or held herself out as doing something, in the business. In this case the wife contributed no capital, took no part in the business, and the business was not conducted in her name. There was nothing whatever to indicate that the wife had any interest in the business except that the bankrupt now says so. The only question, in my mind, in this case, arises from the trifling value of the assets omitted from the schedules. The bankrupt's business seems to have dwindled down to almost nothing before he went into bankruptcy. His store at 776 Lexington avenue is about 10 by 15. He carried no stock of goods. He did repairs, and, when he got orders for clothes, purchased enough to make the suit; and, until he got ready to begin work upon it, put the cloth so purchased in the window to make a little show. The value of the good will of such a business, of course, is substantially nothing, and I do not suppose that the fixtures and stock on hand, if they had been put in the schedules, would have sold for $50. They probably would not have brought enough to pay the expenses of the proceeding, so that probably they would have afforded no dividend to creditors. Under such circumstances I have hesitated to find that the bankrupt's verification of schedules which omitted assets of such trifling value constituted knowingly and fraudulently making a false oath; but if a man wants to obtain, through the bankruptcy act, a discharge from his debts, he must, in good faith, turn over all his assets to his creditors. I am constrained to believe that the bankrupt's omission to insert these assets was intentional, and was a mere carrying out of his preconceived plan of hindering, delaying, and defrauding his creditors by asserting that the business which he carried on was his wife's. Upon the whole, in my opinion, the bankrupt has knowingly and fraudulently made a false oath or account by verifying schedules in this proceeding which omitted to state the assets used in his business.

Henry Gottgetreu, for bankrupt.

S. & B. Oppenheim, for opposing creditor.

BROWN, District Judge. The bankrupt's examination satisfies me that he has not dealt honestly, and has not meant to deal honestly by his creditors; that he knew the business at Lexington avenue was his own and not his wife's; and that his statements as to assets in his schedules were untrue, and that he knew them to be untrue. I can give no encouragement to such practices because they are small, but must consider them equally fatal in large and small cases alike. Discharge refused.