In re BECKER.

(District Court, N. D. New York. January 31, 1901.)

BANKRUPTCY—DISCHARGE—CONCEALING INTEREST IN LIFE POLICIES.

A bankrupt will be refused his discharge on the ground of knowingly and fraudulently concealing from his trustee his interest in policies on his life, they being payable to him either under their terms, or the terms of assignments of them to his wife, in case he survives her, or is living at the end of the 20 years, when they are payable, and his schedules having shown no assets, though the policies aggregated $11,000, and the annual premiums were $525, and he having resisted the efforts of the trustee to realize on the policies.

In Bankruptcy. On motion for a discharge and objections thereto.

The discharge is opposed upon two grounds. First, that the bankrupt knowingly and fraudulently concealed from his trustee his interest in four policies of insurance upon his life; and, second, that he made a false oath when he verified his schedules, which stated that he had no policies of insurance or interest therein. The issue joined upon the petition and the objections was referred to the referee in charge. In December, 1899, the referee filed a report, together with an opinion, recommending that the discharge be granted. This recommendation was based upon the ground that the omission to list the policies and other property was an oversight without fraudulent intent; and, also, upon the ground that neither the creditors nor the trustee had, at the date of the report, questioned the transfers to the bankrupt's wife and that as the legal title was still in her the bankrupt was not called upon to report the property so held in his schedules. The matter came on for argument upon the pleadings and the report of the referee in December, 1899. Upon the argument it was stated that the trustee contemplated bringing an action in the supreme court of the state to decide the legality of the transfers of the bankrupt and to ascertain the interest of the trustee in the various policies in question. The court reserved its decision upon the question of the discharge until the determination of this action. The action was tried and resulted in a decree deciding that certain property and policies of insurance alleged to have been fraudulently transferred by the bankrupt actually belonged to his wife and that the trustee had no interest therein. Regarding the four policies of insurance in controversy, which were issued upon the life of the bankrupt by the Northwestern Mutual Life Insurance Company, the court found that the first of these was issued September 16, 1881, for $2,000, and was payable to the wife of the bankrupt. The second was issued October 4, 1882, for $2,000 and was likewise payable to her. Each of these policies contained this clause: "In case of the death of said beneficiary before or at the time of the death of the person whose life is insured, the amount of the insurance shall be payable at maturity to the executors, administrators or assigns of said person whose life is insured. * * * In case the insured shall not die within the period of twenty years from the date of the policy, the whole amount shall be payable at the end of that time." The third policy was issued August 11, 1884, for the sum of $2,000, payable to the insured upon death, with a 20-year tontine feature, which allowed the policy to participate in certain earnings. Among the conditions was one that the policy should have at the end of said period a cash value of $883.40 in addition to such surplus as might be earned. This policy was assigned by the insured to his wife, December 10, 1894, and on the following day was assigned by her and the insured to one Wendell, a defendant in the action in the state court, as collateral security for the payment of the sum of $4,600. The assignment from the insured to his wife contained the following clause: "In the event of the death of the said assignee before the policy becomes due, then, in that case, the proceeds thereof shall be payable when due to my executors, administrators and assigns." The fourth policy was issued January 21, 1889, for $5,000, payable to the insured at his death within 20 years, and if he should survive, to him at the end of said period. On the same day

the bankrupt assigned this policy to his wife, the assignment containing this provision: "Provided, however, that this assignment is upon the express condition that if the said Charles W. Becker, the person whose life is insured in said policy, shall be living at the expiration of the tontine period named in said policy, then this assignment shall thereupon cease and determine and all interest therein shall thereupon revert to and absolutely vest in said Charles W. Becker. The intent of this instrument being to grant to said assignee the proceeds of said policy only in the event of the decease of said Charles W. Becker before the expiration of the tontine dividend therein named. * * * In case of the death of the said assignee before the policy becomes due and before the expiration of the tontine period, then it should be payable to the insured or his executors, administrators or assigns." The bankrupt and his wife, on the 12th of March, 1895, assigned this policy as collateral security to said Wendell. The court found that the bankrupt has an interest in these policies, subject to the equitable lien of his wife and Wendell for premiums, which they may have paid, and the indebtedness of Wendell, for which they may have been pledged, and that this interest of the bankrupt passed to the trustee to be distributed among the creditors of the bankrupt. The court says: "The peculiar provisions of the policies and the terms of the assignments give the insured certain rights under certain circumstances which are available and are property within the meaning of the law." It was further held that the bankrupt did not procure the assent and did not make the assignment of the policies in question to his wife for her sole use as provided in chapter 80 of the Laws of 1840 of the state of New York, but by his contracts with the insurance company, or by his assignments to her, has reserved to himself certain rights which were property in his hands at the time of the filing of his petition in bankruptcy. The precise amount due the trustee under this decision has not yet been ascertained, a referee having been appointed to take and state the account. It was, however, conceded by the counsel for the bankrupt that the amount due the trustee under the decision would be about the sum of $1,500. On the other hand counsel for the creditors insist that it will amount to very much more than this sum. The petitions and schedules of the bankrupt were filed March 8, 1899. They are in the prescribed form and are verified by the usual oath. In the schedule of his property the bankrupt stated that he had no "policies of insurance," no "personal property" and that no portion of his property had been conveyed by deed or assignment or otherwise for the benefit of creditors. Prior to the action in the state court the trustee demanded that his claim should be recognized by the bankrupt, but the demand was refused. The question now comes on to be heard upon the original papers and in addition thereto upon the findings and decision of the state court relating to the policies in question.

E. P. White, for bankrupt.
Henry V. Borst and Frank W. Thomas, for opposing creditors.

COXE, District Judge (after stating the facts). It has now been judicially determined that at the date of the petition the bankrupt had an interest of at least $1,500 in four policies of insurance upon his own life, aggregating $11,000, upon which the annual premiums amounted to $525. It is incredible to suppose that he had forgotten such important documents and that the omission from the schedules was through inadvertence. This court has recently had occasion to consider a case of honest mistake growing out of the failure to report policies of life insurance. In re Adams (D. C.) 104 Fed. 72. If the facts were at all analogous the court would, of course, resolve the doubt in favor of the bankrupt, but a casual comparison of the two cases will demonstrate the radical difference upon the crucial point. Here the bankrupt's interest is not vague, indefinite and uncertain, but clear, obvious and substantial. His schedules

show no assets of any kind. His interest in these policies was the only property he owned. If he outlived the tontine period of 20 years the surrender value was due to him and not to his wife. Upon two of the policies he could realize in two and three years respectively. To find that he did not know of the existence of this interest is to assume that he was deficient in the most rudimentary mental processes. The fact that the amount was not then ascertained is immaterial as it was his duty to schedule all his property. Bankr. Act, § 7a (8). That he failed to report these policies is conceded, that he did this knowingly cannot be successfully disputed and that he has since resisted the trustee in his efforts to realize upon the policies is established beyond question. The inevitable conclusion would seem to follow that the concealment was with the intent to prevent the property from reaching his creditors. The omission knowingly of property from the schedules and the verification thereof constitutes a false oath within the meaning of section 29b (2) of the act. In re Lewin, 4 Am. Bankr. R. 636, 103 Fed. 852; In re McNamara, 2 Am. Bankr. R. 566, 579; In re Lowenstein, 2 Am. Bankr. R. 193, 106 Fed. 51; In re Hirsh, 2 Am. Bankr. R. 715, 724, 96 Fed. 468; Coll. Bankr. (3d Ed.) 167; In re Alderson, 3 Nat. Bankr. News & R. 189, 98 Fed. 588. In Re Wood (D. C.) 98 Fed. 972, the bankrupt omitted from his schedules a vested remainder of doubtful value which he held in his father's estate. Although the burden is generally upon the creditors to prove their objections it was decided that when a material omission is shown it is incumbent upon the bankrupt to explain the transaction. It was held further that the failure to list the interest, coupled with the bankrupt's testimony that he took nothing under his father's will, was a fraudulent concealment which forfeited a discharge.

The court is constrained to hold that both the objections as above stated have been established. If the bankrupt had omitted to report to the trustee a note or mortgage on which $1,500 was due, or if he had concealed that sum in cash, there would probably be perfect accord between counsel as to the mala fides of the transaction. How is the situation changed because the sum was due the bankrupt on an insurance policy rather than a note or mortgage? A discharge is intended to relieve misfortune, but it must be misfortune coupled with absolute honesty. It is the reward which the law grants to the bankrupt who brings his entire property into court and lays it, without reservation, at the feet of his creditors. This much the law demands. Where it is evident that he is scheming to be relieved of his debts while holding property which should be applied to their payment, he is not entitled to consideration from the court of bankruptcy. The discharge is denied.