## BAYLOR v. RAWLINGS.

(Circuit Court of Appeals, Eighth Circuit.    October 14, 1912.)

### No. 3,730.

BANKRUPTCY (§ 409*)—DISCHARGE—DENIAL—GROUNDS—FAILURE TO KEEP BOOKS.

A bankrupt, having engaged in a partnership in the automobile business, borrowed large sums of money from his father, and when sales were made he would repay his father, retaining his share of the profits. The bankrupt, while in the automobile business, negligently caused the death of S., and in an action against him judgment was recovered for

---

$2,125. The bankrupt attempted to compromise the judgment by offering a small sum, which would equal his expenses of going through bankruptcy, and such judgment was the only claim filed in the proceedings. Within a few days of instituting bankruptcy proceedings, he paid his father by check a large sum of money, liquidating the partnership. He kept books and records of the firm business, but refused to produce them in the bankruptcy proceedings, and finally claimed they were lost. He also kept a private account with his father, but these books, also, were not produced. *Held* that the bankrupt was not entitled to discharge under Bankr. Act July 1, 1898, c. 541, § 14, 30 Stat. 550 (U. S. Comp. St. 1901, p. 3427), as amended by Act June 25, 1910, c. 412, § 6, 36 Stat. 839 (U. S. Comp. St. Supp. 1911, p. 1496), providing that a bankrupt shall not be granted a discharge if he has failed to keep books of account, or records from which his condition may be ascertained.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 739, 752–757; Dec. Dig. § 409.*]

Appeal from the District Court of the United States for the District of Nebraska; Thomas C. Munger, Judge.

In the matter of bankruptcy proceedings of Floyd Rawlings. Application by the bankrupt for discharge. F. B. Baylor, trustee in bankruptcy, filed resistance. From an order of the District Court, setting aside a referee's report refusing the application and granting the discharge, the trustee appeals. Reversed, with directions to deny the discharge.

John S. Bishop, of Lincoln, Neb. (A. S. Tibbetts, of Lincoln, Neb., on the brief), for appellant.

George A. Adams, of Lincoln, Neb., for appellee.

Before SANBORN and HOOK, Circuit Judges, and McPHERSON, District Judge.

SMITH McPHERSON, District Judge. Floyd Rawlings, in a voluntary proceeding, was January 12, 1911, adjudged a bankrupt. February 22, 1911, he made application for a discharge from his debts. The trustee of the estate filed a resistance, on the ground that the bankrupt concealed, destroyed, or failed to keep books of account from which his financial condition might be ascertained, and done with the intent to conceal his true condition, and in contemplation of bankruptcy. This issue was referred to a referee to take evidence and report thereon, who reported against granting a discharge. On exceptions filed by the bankrupt, the District Court set aside the report, and granted the discharge, and the trustee has appealed.

The material facts, concerning which there is no substantial conflict, are as follows:

In the summer of 1908 the defendant, the bankrupt, was an unmarried man, and had been engaged with his father in the real estate and insurance business. He was a young man of education. That year he entered into a copartnership with another party to engage in buying and selling automobiles. When one or more automobiles were purchased by the partnership, each party paid one-half of the pur-

chase price, including expenses. When machines were sold, the proceeds were divided. Partnership affairs were settled generally once a week.

The money used by the bankrupt in making purchases of automobiles and paying his share of the partnership expenses was borrowed by him from his father, and when sales were made he would repay his father the amount of the loan and retain his share of the profits. Within a few days of instituting the bankruptcy proceedings, he paid his father, by check, a large sum of money, the exact amount being unknown, and the check was not produced.

The bankrupt was engaged in litigation in the state court, resulting in a judgment against him, in which this check was produced and made an exhibit in the state court proceedings, as accessible to the one party as the other in this litigation.

Shortly before the bankruptcy proceedings the bankrupt used the balance of his money in the payment of expenses on account of his wedding, he buying a diamond ring for the lady, and a wedding trip was taken and sums of money paid out for other matters, none of which are accounted for with anything like precision.

The items of debit and credit between himself and father were kept by the bankrupt in pocket memorandum books, which, shortly before these proceedings, disappeared and are not in evidence.

After being in the automobile business a time, the bankrupt, in operating an automobile, negligently caused the death of one Christopher Schavland, for which, under the laws of Nebraska, the widow, as administratrix, brought an action in a state court, resulting in a judgment in her favor against the bankrupt in the sum of $2,125. Attempts were made to obtain a cancellation of that judgment by a compromise; the bankrupt offering, however, but a small sum, stating that he would pay no sum other than that which would equal his expenses to go through bankruptcy. That claim was the only one filed in the bankruptcy proceedings, and the evidence showed that the only reason for the bankruptcy proceedings was to get rid of that judgment without paying any sum of money on account thereof.

The trustee was unable to secure any assets, and this judgment creditor has been paid no sum whatever, for the wrongful act resulting in the death of her husband.

The purpose of a voluntary proceeding in bankruptcy is in consideration that the bankrupt promptly surrender all of his nonexempt property to the bankrupt court, to the end that all of his creditors, without preference or priority, may take share and share alike in percentage of the property thus surrendered; then the bankrupt is given an acquittance of such percentages of his debts not thus paid, and may commence his business life anew. Wilson v. City Bank, 17 Wall. 473, 21 L. Ed. 723; In re Lowenstein (D. C.) 106 Fed. 51; In re Leslie (D. C.) 119 Fed. 406; In re Breitling (C. C. A. 7th Circuit) 133 Fed. 146, 66 C. C. A. 212; Barton v. Texas Co. (C. C. A. 8th Circuit) 136 Fed. 355, 69 C. C. A. 181; In re James (D. C.) 175 Fed. 894, and same case on appeal (C. C. A. 4th Circuit) 181 Fed. 476, 104 C. C. A. 224.

To be thus discharged from his debts without payment is a great favor that the national laws, through national courts, bestow upon him. All other men are liable for their debts in full, but the honest bankrupt is thus allowed to get rid of his debts without making payment thereof. Such favors carry corresponding moral and statutory responsibilities. District Courts, with the aid of referees, must determine all controverted questions, both of fact and of law. The trustee is an administrative officer, and it is his duty to take possession of all of the assets of the bankrupt and convert the same into money. It oftentimes happens that some or all of these assets are accounts and bills' receivable, and it oftentimes happens that the actual debtors of the bankrupt deny liabilities. Sometimes such debtors and the bankrupt act in collusion. Recognizing these things, Congress provided that the bankrupt, who, with intent to conceal his financial condition, destroys, conceals, or fails to keep books of accounts from which his financial condition may be ascertained, is not entitled to a discharge. In construing this statute, courts deal with both the creditor and the bankrupt, in the light of the character of the business of the bankrupt. Some unfortunate debtors are illiterate, and whose business has been such as the court would not expect accounts of to be kept. In other cases account books are required, but not with the formality or precision that business men of experience would keep. There is and can be no hard and fast rule upon the question as to the precise kind of account books that must be kept and produced.

We are now dealing with a case of a young man who had had one or more years of experience with his father in the insurance and real estate business, necessarily requiring the keeping of accounts, with clients and other parties with whom business was done, crediting and debiting moneys, and keeping an account of expenses and of the commissions received as compensation. After quitting that business he formed a copartnership, necessarily requiring the keeping of partnership accounts with both debits and credits. The business was organized for profit, and quite likely there were profits, at least equaling the value of the time devoted to the business. The bankrupt was continuously borrowing money from his father, at times several thousands of dollars, thus again requiring the keeping of an account showing debits and credits as to principal, and quite likely with reference to interest. Since quitting the automobile business, he and his father have sustained confidential business relations.

The death of the party, Schavland, and litigation ensuing, resulting in a judgment against the bankrupt, brought the automobile business to an end. Thereupon he gave his father a large check against the partnership earnings. Then he checked out several hundred dollars on account of wedding expenses, and for various trips.

But the state of the account between the bankrupt and the father, and the bankrupt and the partner, and his accounts with reference to purchases and sales of automobiles, are not made known to the trustee, and he is utterly unable to state the situation with any kind of accuracy, nor can he determine whether the father or the partner, or

either of them, is owing the bankrupt or not. The record shows that he sold his automobile business for several thousand dollars in cash.

Books of account, however crudely kept, but kept with honesty and presented to the trustee and referee, would have been a solution of the entire situation. This the bankrupt has not done, and his offered excuses are not at all persuasive to the court.

In the effort to compromise the judgment for an amount equal to the expenses of the bankruptcy proceedings, the bankrupt threatened that his father would modify his will if the judgment were not scaled down to a nominal sum of money. By this the bankrupt meant that his father, a man of means, would see to it that the bankrupt would take nothing directly by inheritance, and again delay or entirely avoid the satisfaction of the judgment in question by judicial process.

The bankruptcy statute of 1898 (section 14) with amendments in force in 1910, provides that one ground for denying a discharge is: If the bankrupt has "with intent to conceal his financial condition, destroyed, concealed or failed to keep books of account, or records from which said condition might be ascertained." The record shows that the bankrupt did keep books and records with the firm in the automobile business, and some of those books and records were introduced in evidence in the state court, which could have been produced on the hearing on the application for a discharge. The evidence also shows that the bankrupt did, in pocket memorandum books, keep a full record of accounts with his father, amounting to several thousands of dollars. The amounts of those transactions are not disclosed. It is disclosed that at one time the bankrupt had in the partnership something like $6,000 of money, part of which was in turn owing to his father. When a witness, he said those books were still in existence; but time after time he was asked to produce the same. The result of it all was that he did not produce the books, and finally claimed they were lost.

The statute above quoted requires him to keep books of account from which his financial condition might be ascertained. Assuming that that was done, then the evidence shows that the books have either been concealed or destroyed by the bankrupt. These accounts were between him and his father, and, considering such relationship, there can be no presumption in favor of the father or in favor of the bankrupt. When the bankruptcy proceedings were at an end, and this judgment was rendered, the father took all of the proceeds; then the books disappeared. On such facts there can be, and should be, no presumption other than that the books showing the accounts between the bankrupt and his father were concealed or destroyed by the bankrupt, with the intent to conceal his financial condition. And such are the authorities. In re Koelle (D. C.) 171 Fed. 257; In re Schachter et al. (D. C.) 170 Fed. 683; In re Hanna, 168 Fed. 238, 93 C. C. A. 452; In re Brod (D. C.) 166 Fed. 1011, affirmed 173 Fed. 1019, 97 C. C. A. 667; In re Haskell (D. C.) 164 Fed. 301; Collier on Bankruptcy (8th Ed.) 281, 282; Loveland on Bankruptcy (3d Ed.) 804, 805, 806.

We conclude that the report of the referee was right, and the District Court was in error in sustaining exceptions to such report. The order of the District Court, in granting the discharge, is reversed, with directions to deny the discharge, and the bankrupt will pay all costs.

It is so ordered