In re NICHOLS.

No. 9939.

District Court, E. D. Missouri, E. D.
Jan. 3, 1944.

Edward K. Schwartz, of St. Louis, Mo., for bankrupt.

Harry S. Gleick, of St. Louis, Mo., for trustee.

HULEN, District Judge.

The trustee in bankruptcy filed specifications of objections to bankrupt's discharge. Hearings were held on the specifications and bankrupt's answer thereto. The referee entered an order sustaining two of the specifications and denying the discharge of the bankrupt. Bankrupt's petition for review of the referee's order denying his discharge is now before the court.

Section 14, sub. c(2) of the Bankruptcy Act, 11 U.S.C.A. § 32, sub. c(2), provides: "The Court shall grant the discharge unless satisfied that the bankrupt has * * * or (2) destroyed, mutilated, falsified, concealed, or failed to keep or preserve books of accounts or records, from which his financial condition and business transactions might be ascertained, unless the court deems such acts or failure to have been justified under all the circumstances of the case."

Subsection (c) concludes as follows: "That if, upon the hearing of an objection to a discharge, the objector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed any of the acts which, under this subdivision c, would prevent his discharge in bankruptcy, then the burden of proving that he has not committed any of such acts shall be upon the bankrupt."

The trustee's objections to the bankrupt's discharge contain seven specifications; specifications A and D were sustained, the remainder were overruled.

## General Facts.

On March 4, 1940 the bankrupt, as an individual, filed a voluntary petition in bankruptcy. At the same time a voluntary petition was filed on behalf of the Menzies Shoe Company, a corporation, of which petitioner was president.

A receiver was appointed for the corporate bankrupt March 4, 1940. Schedules were filed by the corporation on March 11, 1940. At the first meeting of the creditors on March 21, 1940 Morris J. Levin was elected trustee by the creditors. Schedules filed by the corporation showed liabilities of $162,135 and assets of $175,762. Trustee's report filed February 6, 1943 showed the assets liquidated in the amount of $8,866.73. Claims against the corporate bankrupt aggregate $360,532.11.

Schedules of the petitioner were filed on March 14, 1940 and show liabilities in the amount of $160,477.42 and assets in the amount of $64,566.87. Trustee's re-

port filed on February 6, 1943 show the assets liquidated at $1,614.84. Claims were filed in the petitioner's case in the aggregate sum of $293,564.95. Morris J. Levin was elected trustee of the petitioner's estate on June 11, 1940.

In addition to being President of the Menzies Shoe Company of Missouri petitioner was also president of two other shoe companies of like name; one in Wisconsin and one in Tennessee.

## Specification A.

This objection to discharge of the bankrupt is based upon the concealment of a book, identified as Trustee's Exhibit 1. This book was a bound, looseleaf ledger, consisting of approximately 160 sheets, containing an index or chart of the accounts and 91 separate accounts relating to the business and financial transactions of the petitioner from the years 1933 to 1939. It contained accounts relating to the petitioner's purchase and sale of stocks and bonds, his real estate purchases and holdings, including property in Tennessee and Texas; accounts of the International Shoe Company settlements; notes and accounts receivable and payable, including petitioner's salary account. There were accounts designated "cash in bank", "principal", "net income", "capital gains and loss", "taxes", "dividends"; also a "trial balance" for each year from January 1, 1933 to December 31, 1938.

On the date petitioner filed his voluntary petition in bankruptcy, he took this ledger from his office at the Menzies Shoe Company, where it had been kept. It was not delivered to the trustee in bankruptcy until October 19, 1940, two years and four months after the filing by the bankrupt of his petition in bankruptcy. It was delivered at the trustee's office to the trustee's secretary.

About October 1, 1942, counsel for the trustee had examined a Mrs. Alt in New York City, who had been a bookkeeper for the petitioner. The examination revealed that the petitioner had not delivered to the trustee certain of his records. Petitioner learned of the examination of Mrs. Alt and on October 8th addressed a letter to her inquiring: "What did you tell him"? (referring to the trustee). Mrs. Alt informed the petitioner by letter, among other things, "I was asked about the missing ledger sheets and could not throw any light on that either".

A number of unbound ledger sheets which apparently had originally been in Trustee's Exhibit 1, were delivered to the trustee at or soon after his appointment. Apparently it was this partial record that Mrs. Alt was referring to. Mrs. Alt's letter was dated October 12, 1942. On Monday following, October 19th, petitioner delivered Trustee's Exhibit 1 to the trustee.

During the interval between June 11, 1940, when the trustee was appointed, and October 14, 1942 when Trustee's Exhibit 1 was delivered by the petitioner, the petitioner had been frequently examined before the referee and interviewed by the trustee regarding his books and records. The following is a typical example, of which the record abounds, of the testimony of the trustee in the above respect: "A. He said I had all the records, there were no more. Now, I must say, though, at a later time, it was around—I can't fix the exact date right now, but I think in December of that year, Mr. Nichols in one of the sessions here in Court said that he had found something else, but this was all. He had left some old stock certificates in the Menzies Shoe Company, a few fractional shares of stock in St. Louis Public Service Company, and one or two other small items, and he said, 'Now that is all I have, I have nothing more, I have no more books, records or papers, you have them all, you have everything.'"

Testifying further on this subject and showing knowledge on the part of the petitioner that the trustee was entitled to his records, we quote: "A. Mr. Nichols told me that these two filing cabinets that were there and that had been withheld from the sale, one being a Macy cabinet and the other being a Shaw Walker, contained his personal records, and he wanted to have his personal records. I explained to him that inasmuch as they were his records, I as Trustee in Bankruptcy was entitled to them; that I could not turn them over to him; that I would have to retain possession of them."

Petitioner took the same position regarding his records in appearances before the referee: "A. I asked Mr. Nichols if these were all his records, if I had everything; and he said that I did, he had nothing more, nothing more at all. And there was some testimony at the hearing that day, the transcript is here in evidence,

in which I specifically asked him if I had all of his records, and he said he had nothing more, this was the last one."

Passing from the subject of concealment to the question as to whether or not Trustee's Exhibit 1 was a book "from which his financial condition and business transactions might be ascertained", we examine the record as to the character of the book, known as "Trustee's Exhibit 1". One of petitioner's bookkeepers testified, referring to Trustee's Exhibit 1: "Q. This then was the only book that you used for the original entries of Mr. Nichols? A. Yes, sir."

The record not only shows it was a book of original entry, used by the petitioner, but was the only "complete record" of the petitioner's business affairs. The bookkeeper testified: "Q. Trustee's Exhibit 1 was the only complete record in one place of Mr. Nichols' business affairs, wasn't it? A. As far as I know."

The book was necessary in the administration of the bankrupt's estate by the trustee and would have been conducive to its orderly and economical liquidation. Delivered two years and four months after appointment of the trustee it may yet serve some purpose. While counsel for petitioner may argue that Trustee's Exhibit 1 was a joint book of petitioner and his wife, such is not the testimony of the petitioner: "A. I don't recall saying my books would show anything, I said the books, that is the company's books, that is in reference to salaries and stuff that was due me, that was the company's books. I only had one book, that is Exhibit 1."

The record of the hearing on this matter before the referee in bankruptcy contains 1412 pages and two large volumes of exhibits. No purpose would be served and we do not think it necessary to quote further from that record. We believe the record sustains the finding of the referee on Specification A. Certainly we cannot say that "the master's findings of facts are clearly erroneous". Unless such is the case the court should accept them. See Rule 53(e) (2), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

Was the conduct of the petitioner justified in concealing Trustee's Exhibit 1? We do not deem it necessary to discuss the proviso at the end of Subsection c of Section 14 of the Bankruptcy Act, "the burden of proving that he has not committed any of such acts shall be upon the bankrupt", because we believe that the record in this case establishes by substantial evidence that the ledger book was concealed from the trustee. The remaining question is, Was such act "justified under all circumstances of the case"? Where is the burden of proof on this question?

In the case of Nix v. Sternberg, 38 F. 2d 611, loc. cit. 612, the United States Circuit Court of Appeals for the Eighth Circuit said: "It is to be noted that this amendatory statute omits the words, 'with intent to conceal his financial condition,' which were contained in the former statute, in connection with the provision relating to the failure to keep books. But in the amendatory statute are added the following words: 'Unless the court deem such failure or acts to have been justified, under all the circumstances of the case.' The burden of proving 'intent to conceal' is taken from the objecting creditors or the trustee; and the burden of proving justification is placed upon the bankrupt."

By brief filed on behalf of petitioner, he takes the position that the ledger was "joint in character", the property of petitioner and his wife and for that reason the trustee was not entitled to it. The referee could well draw the conclusion from the record that some at least of the references to "my wife" appearing on the sheets contained in the ledger were afterthoughts of the petitioner. One of the bookkeepers for petitioner testified as follows:

"Q. I will show you the words 'and wife' written in pencil—do you recognize whose handwriting that is? A. It looks like Mr. Nichols' handwriting.

"Q. Did you ever see that written on there before? A. I don't remember."

Referring to one of the accounts shown in the ledger sheets, the bookkeeper testified:

"Q. (By Mr. Schwartz): I thought you could look at the book and tell us about that. I have what purports to indicate some of the records that might pertain to Mrs. Nichols; will you look at account No. 1 on page 9? A. Account No. 1, cash in bank, Savings Trust.

"Q. Now is there anything there pertaining to Mrs. Nichols? A. (after examining): I don't see her name mentioned here".

Of the type of some of the entries appearing on the ledger sheets the record shows the following: "Q. Now, account 65 in that book is headed S. D. Nichols's personal account, is it not? A. That is right, yes, sir; and shows all the various checks and monies received by Mr. Nichols, the salary from Menzies Shoe Company and a record of other items".

The petitioner called it a "personal ledger".

■ Further justification is urged by petitioner on the basis "that the ledger does not contain anything more than was already contained in other records in appropriate indexed labeled folders filed away in three filing cabinets and other receptacles on the premises". This is an assumption on the petitioner's part. Had the trustee gone to the time and expense of attempting to reconstruct the ledger it might have corresponded with the Trustee's Exhibit 1. The petitioner cannot justify his withholding this record from the trustee by urging that the only effect of withholding it was to give the trustee cause for depleting the assets of the estate and delaying its liquidation by the employment of auditors to duplicate a ledger already in existence and in the petitioner's possession.

■ Further justification is claimed on the ground that the petitioner "had never been asked for the ledger". Petitioner was asked for all of his books and records. How could the trustee demand this specific ledger without knowledge of its existence? The petitioner claims he tried without success to deliver the ledger to the trustee on three different occasions. The petitioner was eminently successful in making delivery of the ledger on learning that his bookkeeper had revealed its existence. The petitioner boldly calls upon the trustee to state a motive for concealing the ledger. It is not necessary to show a motive under the statute. If the record was concealed and was one from which petitioner's financial condition and business transactions might be ascertained, he is not entitled to a discharge unless the act of concealment can be justified. Regardless of the motive the result was to prevent the trustee from gaining access to the figures and matters set forth in the record. The ledger revealed facts not otherwise known to the trustee. The trustee testified: "A. This

sheet purports to show that Mr. Nichols received out of that settlement in cash $89,923.92; in one examination after another conducted here, Mr. Nichols denied from time to time that he has received any substantial amount or sum; he said that all of the money had been spent for the benefit of the Menzies Shoe Company, and the Menzies Shoe Company of Wisconsin, and he didn't profit by it except upon surrender of certain shares of stock. Until we had this we never knew that Mr. Nichols got eighty-nine thousand or eighty-nine hundred dollars out of that settlement."

Further justification is offered on the theory that the ledger was a joint record and that petitioner believed he was entitled to take it as a matter of right— "based upon legal advice" given him by two different attorneys—"that joint property of husband and wife would not be administered upon and did not belong to the trustee in the event of bankruptcy". (Petitioner's brief.)

Petitioner is represented by able counsel. It is noted that in his brief counsel for petitioner does not state that he advised the petitioner that "the ledger" should be concealed or kept from the trustee; neither did petitioner's counsel testify before the referee that such advice was given.

With a record showing that on three occasions petitioner claims he tried to deliver the ledger to the trustee; that it was a book of original entries of which he had but the one, kept in his place of business and personally taken by him from the place of business on the date he filed his petition in bankruptcy, when petitioner was confronted with the ledger (Trustee's Exhibit 1) (over two years and four months after filing his petition), he gave the following testimony as to his knowledge of its contents:

"A. Mr. Gleick; I couldn't tell you what all it contained because I have never examined that book in my life, but it was supposed to contain every possible record of Mrs. Nichols and myself, including donations and everything else that would affect income, taxes and insurance, and that was the only purpose that record was kept.

"Q. Did it contain a single record regarding Mrs. Nichols' bank account? A. I couldn't tell you what it contained, I have never examined that book.

"Q. There is nothing in it regarding Mrs. Nichols' bank account? A. Mrs. Nichols' personal affairs, all money given to Mrs. Nichols was accounted for. I will have to examine the record—

"Q. Just answer my question. A.— from beginning to end; I have never examined it before."

The foregoing testimony is a sad commentary on the conduct of a bankrupt in a proceeding to liquidate his estate, and the duty of the bankrupt to aid and cooperate with the trustee, when viewed in the light of the following testimony of petitioner's bookkeeper, as to the manner in which the petitioner used the ledger, Trustee's Exhibit 1:

"Q. Can't you remember whether or not he looked at the ledger? A. Well, he had the ledger in his possession at times; I knew he looked at it—

"Q. You say he had the ledger in his possession at times; where would he keep it? A. Well, I had the ledger but if he wanted it it was there in the files, and I know he looked at it at times.

"Q. How often would he look at it? A. I don't remember that.

"Q. How often—every once in a while? A. I know he looked at it, but how many times I couldn't tell you."

The petitioner has failed to indicate and an examination of the record discloses no reason for not accepting the findings of fact and conclusions of law of the referee, presumptively correct, and on those findings and conclusions the discharge should be refused. .

### Specification D.

Specification D charges the petitioner concealed or failed to keep books of account or records from which his financial condition and business transactions might be ascertained in regard to money received in settlement of certain litigation in 1932 with the International Shoe Company. It is charged that the petitioner personally received a large per cent of the recovery of $150,000, and that the petitioner's records do not reflect the receipt or disposition of the money by the petitioner. We will not discuss this specification in detail. We have read the briefs of respective counsel and examined the record and it is our judgment that the conclusion reached by the referee is sustained by the record. Examination of the record leaves no doubt that the bankrupt did not keep accurate records of the disbursement of the fund involved in the settlement of the International Shoe Company matter. It was a large and substantial sum.

Surely the petitioner does not think the court so naive as to believe that in handling a transaction involving the amount of money received from settlement of the International Shoe Company case, no complete record would be kept of the receipts and disbursements. Petitioner was a man who engaged in extensive business enterprises, involving large sums of money over a long period of time. At the time of initiating the bankruptcy proceedings his liabilities were large and his assets small in comparison.

"The statute above. quoted requires him to keep books of account from which his financial condition might be ascertained. Assuming that that was done, then the evidence shows that the books have either been concealed or destroyed by the bankrupt." Baylor v. Rawlings, 8 Cir., 200 F. 131, loc. cit. 135.

Also see In re Waddington, D.C., 17 F.Supp. 848, loc. cit. 849 (Maine), where the court said: "Creditors are entitled to the assistance of books of account— proper under the circumstances—to ascertain the nature and extent of the business transactions of the bankrupt and to determine whether or not it is an honest bankruptcy."

The court cannot escape the conclusion from reading the record in this case and briefs filed that the petitioner is proceeding upon the theory' that a bold offence is a good defence. Petitioner seems to be laboring under the erroneous impression that he has a right to a discharge in bankruptcy, irrespective of his conduct in the bankruptcy proceedings.

"The right to a discharge is not something which a bankrupt is entitled to for the mere asking. It is a high privilege which should not be granted except in clear cases where all the statutory conditions and requirements have been fully met and complied with." In re Northridge, D.C., 53 F.2d 858, loc. cit. 859.

### Order

The order of the referee made on November 10, 1943, sustaining Specifications A and D of the trustee's objections to the discharge of the bankrupt is affirmed, and discharge of the bankrupt is denied.

## 2. Motion of Trustee to Tax Certain Costs Against Bankrupt.

The trustee has filed a motion to tax against the bankrupt certain costs incurred in opposing his discharge. In oral argument counsel for the bankrupt indicated that the costs should be apportioned in view of the fact that only part of the specifications of the trustee opposing the bankrupt discharge were sustained. It is only necessary that one of the specifications be sustained to deny discharge. The referee's action could not have been different had all of the specifications been sustained.

### Order

Motion of trustee to tax costs against bankrupt is sustained and costs in the sum of $784.69, as itemized in motion, are taxed against the bankrupt Samuel D. Nichols. Execution may issue therefor.

To the ruling on the respective motions petitioner is allowed an exception.