### HUDSON v. MERCANTILE NAT. BANK OF PUEBLO, COLO.

(Circuit Court of Appeals, Eighth Circuit. November 19, 1902.)

#### No. 1,772.

1. BANKRUPTCY—DISCHARGE—CONCEALMENT OF PROPERTY.

A bankrupt furnished the money with which two tracts of public land were acquired, one by his son and the other by a third person. After the land was patented such third person conveyed his tract also to the son at the bankrupt's instance and without consideration. The land had previously been occupied for a number of years by the bankrupt as a part of his ranch, and he continued to occupy and use the same afterwards without accounting for rents or profits to the son, who did not reside upon the land, but had removed to Mexico even before the title was acquired. .Held, that either a trust resulted in favor of the bankrupt from his payment of the consideration which he could enforce, or, if the conveyance to the son was for the purpose of defrauding creditors, he held it on a secret trust for the bankrupt, and in either case it was the bankrupt's duty to schedule the land as a part of his estate, and his failure to do so amounted to a fraudulent concealment of property from his trustee, within the meaning of Bankr. Act 1898, § 14b [U. S. Comp. St. 1901, p. 3427], which justified the court in refusing him a discharge.

Appeal from the District Court of the United States for the District of Colorado.

J. E. Rizer, for appellant.

Henry A. Dubbs (Henry Hunter, on the brief), for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. This is an appeal from an order made by the district court of the United States for the district of Colorado whereby Joshua B. Hudson, who was adjudicated a bankrupt on his own petition on June 4, 1900, was denied a discharge. Numerous specifications were made by his creditors in opposition to a discharge, most of the specifications being, in substance, that the bankrupt had willfully made false oaths in certain respects, in the course of the proceedings in bankruptcy; but by the tenth specification in opposition to his discharge it was alleged that the bankrupt had "willfully concealed from his trustee, while a bankrupt, certain property belonging to his estate in bankruptcy," which property so concealed was specifically described, and consisted of three quarter sections of land in Huerfano county, Colo., and a herd of cattle upon said land, all of

which property, as it was averred, belonged to the bankrupt, and had not been scheduled as a part of his estate, as it ought to have been.

The facts disclosed by the record, concerning which there is practically no dispute, are these: The schedules which he filed show that he owed debts to the amount of $58,142.39, and that his assets, all of which he claimed as exempt, amounted to only $1,680. Since the year 1885 the bankrupt has been in possession of a ranch in Huerfano county, Colo., consisting of four quarter sections of land, each containing 160 acres. The ranch is said to be of a value exceeding $20,000. The land composing it was entered in the year 1889 by four different persons, namely, Stephen D. Curtis, Ira Hatch, Maggie Craig, and Isaac W. Hudson, the latter being the bankrupt's son. The land was entered by the persons aforesaid at the instance of the bankrupt, and with money furnished by him for that purpose. He had previously occupied the land either in whole or in part under what are termed "squatters' rights," which he had acquired in the name of his son I. W. Hudson, who is commonly called Walter. At the present time, by virtue of various conveyances that have been made, by the bankrupt's direction, since the land was entered, the record title to the four quarter sections composing the ranch is as follows: The record title to two of the tracts is in the name of the bankrupt's son Walter, the record title to another tract is in the name of his son Tim Hudson, while the record title to the remaining tract is in the name of the bankrupt and is held by him as a homestead. The homestead and the two tracts standing in the name of his son Walter are the most valuable parts of the ranch. One of the tracts, the title to which now stands in the name of Walter Hudson, was the tract which was originally entered in the name of Craig. It was conveyed by Craig to Stephen D. Curtis, without the latter's knowledge, in the year 1893, by direction of the bankrupt. Several years later Curtis was advised of the conveyance, and at the bankrupt's instance and without consideration Curtis conveyed the land which he had so acquired from Craig to Walter Hudson. The last-mentioned deed was withheld from record until November, 1899, being all the time in the bankrupt's custody.

Since the year 1885 the bankrupt has occupied the ranch and dealt with it as his own, applying whatever was realized therefrom to his own use and benefit. Walter Hudson went to Arizona in the year 1884, and engaged in the cattle business in that territory, which business proved to be unprofitable, and in the course of his cattle transactions he appears to have become largely indebted to his father. He returned from Mexico, where he subsequently went and where he now resides, when the time arrived to complete the filing on the two tracts of land which now stand in his name, and then returned to Mexico, and has not been on the ranch since 1895, and has never in fact paid any attention to it since his father's occupancy began.

If any one of the numerous specifications in opposition to the bankrupt's discharge is well pleaded and is sustained by the evidence, it follows, of course, that the order refusing a discharge must be affirmed, since it is not required of any one who objects to a bankrupt's discharge that he shall maintain all of his specifications in opposition thereto. It is unnecessary, therefore, to consider any of the matters

that are alleged in opposition to the discharge save such as appear to be well founded in fact and in law. We have reached the conclusion, after a careful perusal of the record, that the two quarter sections of land, the title whereto now stands in the name of Walter Hudson, are in fact the property of the bankrupt, and that they have belonged to him since their acquisition from the government. We are constrained to believe that as between the bankrupt and his son it has always been well understood that the title to the two tracts of land in question is held in trust by the son for the sole benefit of the father, and that the legal title so held by the son is subject to sale or other disposition, as the bankrupt may desire or direct. As this is purely a conclusion of fact, it would subserve no useful purpose to review the testimony in detail upon which the conclusion is based. It will suffice to say that we have been forced to conclude that Walter Hudson is a mere naked trustee of the title to the two tracts of land, by the manner in which the land was originally acquired by the bankrupt, by the manner in which it has been occupied and used by him for the past 15 years, by his failure to account to any one during that period for the rents and profits of the land, by the failure of the holder of the legal title to call upon the bankrupt for any account of the rents and profits, and by his taking up his abode in a foreign country, and by his failure to exercise any visible acts of ownership over the property since the title was placed in his name. These facts and circumstances in themselves, if there were no others, are quite sufficient, we think, to warrant the belief that Walter Hudson has no interest in the property in question, and that the bankrupt is the real owner and entitled to do with it as he pleases. Such appears to have been the view of the trial court, and we fully concur in that opinion. Moreover, as the land in question was purchased with money provided by the bankrupt, we are of opinion that the facts to which we have adverted rebut the presumption that a gift to the son was intended when the legal title was placed in his name, and that even as between the bankrupt and his son a trust would result in favor of the former, by operation of law, and that he could most likely compel a conveyance of the legal title to himself. On the state of facts presented by this record, we are disposed to hold that a resulting trust could be enforced by the bankrupt. At all events, such a trust could be enforced unless the title to the land was vested in Walter Hudson with a view of hindering, delaying, or defrauding the bankrupt's creditors, in which event, as a matter of course, a constructive trust would arise in favor of the creditors, which would prevent the enforcement of a resulting trust. On the oral argument, however, it was contended by counsel for the bankrupt that he was so far solvent when the title to the land was vested in his son that the act of taking the title in the latter's name did not operate as a fraud upon creditors nor create a constructive trust in their favor. If we accept that view as sound, it follows, of course, that the doctrine of resulting trusts may be applied to the case; and in that event the bankrupt is in a situation to compel a conveyance of the legal title to himself because, as before stated, the circumstances of the case are sufficient to rebut the presumption that a gift to the bankrupt's son was intended. They show rather that the title to the land was placed in the son's

name merely as a matter of convenience, and that it has always been held by him as a naked trustee subject to the control of the bankrupt and to be dealt with as he might direct.

We are of opinion, therefore, in view of what has been said, that it was the bankrupt's duty, when he filed his schedules in bankruptcy, to have included the two quarter sections of land standing in the name of his son Walter Hudson as a part of his property; and the fact that he did not do so, taken in connection with the fact that the record title stood in the name of his son, amounts, we think, to a willful and fraudulent concealment of property from his trustee within the purview of section 29 of the bankrupt act [U. S. Comp. St. 1901, p. 3433]; and the act in question being an offense under the latter section, it constitutes sufficient ground for refusing a discharge under subdivision b of section 14 of the bankrupt act [U. S. Comp. St. 1901, p. 3427]. It has been held on several occasions by courts of bankruptcy that where a person, prior to filing a petition in bankruptcy, conveys the whole or a part of his property to a third party to be held in secret trust for himself, and fails to schedule it as a part of his assets, such an act amounts to a fraudulent concealment of assets which will defeat his right to a discharge. In re Welch (D. C.) 100 Fed. 65; In re Bemis (D. C.) 104 Fed. 672; In re Becker (D. C.) 106 Fed. 54. In the case at bar, as already shown, the bankrupt either has a resulting trust in the two tracts of land in question, which arose without fraud, or Walter Hudson holds the land in secret trust for the benefit of the bankrupt, the trust having been created to defraud creditors; and in either event, as it seems, the land ought to have been scheduled by the bankrupt as a part of his estate, and his failure to do so amounts to a concealment of assets.

We are also strongly inclined to the view, after reading the evidence, that the bankrupt had such an interest in a herd of cattle, some 200 in number, that are now in the possession of a third party, as ought to have been scheduled as a part of his estate; but, as we have concluded that a discharge was properly denied because the bankrupt failed to schedule the land which stood in the name of his son Walter, it is deemed unnecessary to decide definitely whether his interest in the cattle was of a nature that ought also to have been scheduled.

The order denying a discharge is accordingly affirmed.