In re DOWNING.

In re TROUTWINE et al.

(District Court, N. D. New York. September 17, 1912.)

1. BANKRUPTCY (§ 412*)—DISCHARGE—APPLICATION—NOTICE.

Evidence *held* to require a finding that notice of an application for a bankrupt's discharge was properly served by publication and by mail.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 696, 697; Dec. Dig. § 412.*]

2. BANKRUPTCY (§ 417*)—DISCHARGE—APPLICATION TO REVOKE—LACHES.

Where creditors of a bankrupt on whom notice of the bankrupt's discharge was properly served failed for eight months after securing actual knowledge that a discharge had been granted to apply for vacation thereof, they were guilty of undue laches within Bankr. Act July 1, 1898, c. 541, § 15, 30 Stat. 550 (U. S. Comp. St. 1901, p. 3428), providing that the judge may vacate or revoke a discharge on the application of parties in inter-

est not guilty of undue laches, etc., and were therefore not entitled to such relief.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 867–871; Dec. Dig. § 417.*]

3. BANKRUPTCY (§ 417*)—DISCHARGE—VACATION—GROUNDS.

An application to vacate a bankrupt's discharge at the instance of certain creditors in order that they may be given an opportunity to oppose the same will not be granted without a showing of legal grounds, which, if sustained, would result in the refusal of the discharge.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 867–871; Dec. Dig. § 417.*]

In Bankruptcy. In the matter of bankruptcy proceedings of Augustus S. Downing. Application by Barbara Troutwine and George F. Troutwine for an order revoking a discharge granted to the bankrupt. Application denied.

See, also, 192 Fed. 683.

Wesley H. Maider, of Gloversville, N. Y., for petitioners Troutwine.

Ainsworth & Sullivan, of Albany, N. Y., for bankrupt, opposed.

RAY, District Judge. The petitioner Barbara Troutwine is a judgment creditor of the bankrupt, Augustus S. Downing, to the extent of about $5,024.67 on a claim from which the discharge in bankruptcy will be a release. The petitioner's claim was duly scheduled, and said Barbara Troutwine filed her proofs of claim and same were duly allowed. George F. Troutwine is also a creditor of said Augustus S. Downing, whose claim was duly scheduled, proved, and allowed. On or about December 24, 1910, Augustus S. Downing was adjudged a bankrupt, and within the time fixed by law and on or about the 19th day of June, 1911, he filed his application in due form praying for a discharge. Thereupon the court duly ordered that a hearing be had upon the said petition for a discharge on the 5th day of September, 1911, before said court at the time and place fixed in the notice, and that notice of such hearing be given by publication, and that the referee should send by mail to all known creditors copies of such order addressed to them at their place of residence as stated. The referee had such order, which was duly entered in the clerk's office of the District Court, printed on a postal card, to which was annexed a notice as follows:

"To the creditors and all persons interested in the estate of the above named bankrupt; you are hereby required to take notice of the order of which the foregoing is a copy.

"Dated Albany, N. Y., June 20, 1911.

"Edwin A. King, Referee in Bankruptcy."

This notice with the order was printed on the back of postal cards, and same was not only duly published in the Albany Evening Journal, the proper newspaper, but Jean H. Wilson, residing in the city of Albany, makes oath that she is over 21 years of age, and that on the 29th day of June, 1911, she mailed the said

order and notice contained on the said postal cards on a postpaid postal card to the various creditors of the said Augustus S. Downing, including Barbara Troutwine and George F. Troutwine, both at Gloversville, N. Y., and that on said day she deposited the same in the post office at Albany, county of Albany, and state of New York. She now makes affidavit in opposition to this motion setting forth in detail the time, place, and circumstances of mailing the said notices. She makes affidavit that she had the mailing list, directed the postal cards, and placed them on the desk of Charles B. Sullivan, one of the attorneys for the bankrupt, who examined them, and that at the close of business she with said Sullivan departed from the office, and proceeded directly to a United States mail box in the city of Albany, where she deposited the said postal cards so directed and addressed in such letter box in the presence of said Sullivan. Mr. Sullivan confirms this by his affidavit in every particular.

[1] I think the proof must be regarded as conclusive that the order and notice were duly served upon the moving parties Barbara Troutwine and George F. Troutwine on the 29th day of June, 1911. No question is made that the notice and order were not duly published.

The question of discharge came on to be heard on the 5th day of September, 1911, and no objections having been filed, and none being made, a discharge was duly granted on the 5th day of September, 1911, and the papers with proofs of such service by publication and mailing were duly filed in the office of the clerk of this court. The moving parties concede and set out that as early as the 1st day of January, 1912, the said Barbara Troutwine had actual notice that the said discharge had been granted to the said Augustus S. Downing, and it is also shown conclusively that George F. Troutwine had notice thereof shortly thereafter. The petition and affidavits to revoke such discharge were verified September 4, 1912, more than eight months thereafter. They were presented to the court September 5, 1912, and an order to show cause why such discharge should not be revoked was made and served. The said Barbara Troutwine and George F. Troutwine in the moving papers set forth and allege that they did not receive any notice of the filing of the application for a discharge or of the time and place of the hearing on such application, and that they were ignorant thereof until at least January 1, 1912. Both claim that they are creditors and have valid objections to a discharge, and that they should have their day in court, and be allowed to contest the application.

Annexed to the moving papers are specifications of objection which it is proposed to file in case the application is granted, and which read as follows:

"(1) That such application should not be granted, because of the following facts which the undersigned charge to be true, viz.: That for about 10 years and over, prior to said bankrupt's application in bankruptcy, he was an officer receiving $5,000 a year salary. At the time of his application in bankruptcy, he was and now is an educator in the office of the state de-

partment, and that in November, 1907, he transferred his home in Albany, and his equity therein, valued at about $5,000, to his wife, Louise B. Downing, without any cash consideration passing from Mrs. Downing to Mr. Downing.

"(2) That he kept said deed from record until May, 1908, when the bankrupt instructed his attorney to place the same on record.

"(3) That at the time of said transfer said bankrupt was insolvent, to the extent of about $100,000, according to his own testimony and sworn statements herein.

"(4) That he claimed such transfer to have been made to his wife to pay her moneys previously loaned on notes aggregating about $9,000, but that he had no record or dates of the amount of any note or notes covering said amount.

"(5) That he kept no books or records of his business transactions between him and his wife, showing any indebtedness to her whatever, neither did he have any notes covering said indebtedness.

"(6) That if he was, as he claimed, justly indebted to his ·wife in 1907, he transferred his real estate, in order to pay his indebtedness, to her only, thereby committing a fraud upon all of his other creditors who did not receive any of said money or property.

"(7) On account of the nonproductions of books or records, checks, etc., your petitioner was unable to verify any of the acts, testimony, or statements of the said bankrupt, relative to said real estate.

"(8) That ever since the transfer of the property above mentioned to his wife said bankrupt has lived in said property the same as he did prior to said transfer.

"(9) That such application should not be granted, and the discharge already granted should be opened for the reasons above stated and because the following facts constitute additional grounds which the undersigned charged to be true. That the bankrupt was indebted in 1907 to the National Commercial Bank of Albany, ·or liable to them as indorser on papers to the amount of about $50,000, and that he did transfer to them all of his interest in the Opp Mining Company♣ and his stock therein, as collateral security, and that said stock was upon its face worth a number of thousands of dollars, the exact amount your petitioner is unable to state, and that he also agreed that provided they would refrain from pressing their obligations to pay them the sum of $100 a month, which he did, up to the time of his adjudication in bankruptcy.

"Wherefore, objection is made to the granting of such application for discharge, and a hearing, and a judgment of the court is asked thereon."

The transfer of real estate referred to in these specifications took place more than four months prior to the filing of the petition in bankruptcy.

The bankrupt claims, first, that the petitioners here have been guilty of undue laches; second, that the moving papers do not show that the discharge was obtained through the fraud of the bankrupt; and, lastly, that the proposed specifications of objection fail to show any ground for refusing a discharge.

Section 15 of the bankruptcy act reads as follows:

"Discharges, when Revoked. a. The judge may, upon the application of parties in interest who have not been guilty of undue laches, filed at any time within one year after a discharge shall have been granted, revoke it upon a trial if it shall be made to appear that it was obtained through the fraud of the bankrupt, and that the knowledge of the fraud has come to the petitioners since the granting of the discharge, and that the actual facts did not warrant the discharge."

I cannot find as a fact from anything set out in the moving papers that the said discharge of Augustus S. Downing was obtained

through his fraud, or that of his attorneys in the proceeding. It may be that Barbara Troutwine and George F. Troutwine did not actually receive the notice. It may well be that same was lost in the mails, and it may be that such notices were lost after being delivered at and through the post office at Gloversville, N. Y., to said Troutwines or to some one for them. The law does not provide that the notices must have been actually received by the creditors and read by them. After delivery from the post office, they may have been laid aside and overlooked. As already stated, the evidence is conclusive that the notice was not only published, but mailed in the mode and manner required by law. The statute was fully complied with.

[2] But conceding for the sake of argument that actual fraud need not be shown, and that it is sufficient to revoke a discharge to show that a creditor or creditors of the bankrupt did not receive the notice, I must find that both Barbara Troutwine and George F. Troutwine were guilty of undue laches after having actual knowledge that the discharge had been granted. No reason or excuse is shown for not moving promptly to set aside and vacate the order granting the discharge after having notice thereof on or about January 1, 1912. A delay of eight months is not excused, and is not excusable. The papers show that Barbara Troutwine at least took an active part in the bankruptcy proceedings, and, if she did not desire to acquiesce in the discharge, prompt action should have been taken when actual knowledge of such discharge came to her.

[3] But the papers in this case fail to disclose that the actual facts did not warrant the discharge, and fail to disclose that should the discharge be revoked it would or could be denied on a full hearing.

There is no pretense that the bankrupt committed an offense punishable by imprisonment as provided in the Bankruptcy Act, or that with intent to conceal his financial condition he either destroyed, concealed, or failed to keep books of account or records from which such condition might be ascertained. There is no allegation that the bankrupt obtained property on credit from any person upon a materially false statement in writing made to such person for the purpose of obtaining such property on credit, or that at any time subsequent to the first day of the four months immediately preceding the filing of the petition in bankruptcy he transferred, removed, destroyed, or concealed any of his property with intent to hinder, delay, or defraud his creditors. There is no claim or pretense that in voluntary proceedings the said Downing has been granted a discharge in bankruptcy within six years prior to the present discharge now under consideration, or that in the course of the proceedings in bankruptcy he refused to obey any lawful order of or to answer any material question approved by the court. These are the grounds upon which a discharge in bankruptcy may be refused as specified in section 14 of the Bankruptcy Act.

It may be that the court has power to vacate and set aside an order granting a discharge, and in that way vacate the discharge and allow a creditor who has not had notice of the proceeding to come in and oppose the discharge, but, conceding this to be so, the creditor should show that he has not only reason for opposing the discharge, but legal reason and grounds which, if sustained, would result in the refusal of a discharge.

For these reasons, the application to revoke the discharge heretofore granted must be denied. There will be an order accordingly.