In re WAKEFIELD.

(District Court, N. D. New York. August 13, 1913.)

1. BANKRUPTCY (§ 408*)—DISCHARGE—GROUNDS FOR REFUSAL—CONCEALMENT OF PROPERTY.

Under Bankr. Act July 1, 1898, c. 541, § 14b (4) added by Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 (U. S. Comp. St. Supp. 1911, p. 1496), providing that if, subsequent to the first day of the four months immediately preceding the filing of a petition, the bankrupt has transferred, removed, destroyed, or concealed any of his property with intent to defraud creditors, the judge shall deny discharge, if deeds executed by the bankrupt more than four months prior to the filing of the petition were not absolute, but a secret trust existed, or they were mortgages, then the bankrupt, by failing to disclose the facts in his schedules or examination, would be guilty of a fraudulent concealment under the act; but the burden is on the objecting creditor to establish this fact by clear proof, not suspicion.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 732–736, 759, 762, 763; Dec. Dig. § 408.*]

2. BANKRUPTCY (§ 407*)—DISCHARGE—GROUNDS FOR REFUSAL—FRAUDULENT CONVEYANCE.

Under Bankr. Act July 1, 1898, c. 541, § 14b (1), 30 Stat. 550 (U. S. Comp. St. 1901, p. 3427), and section 14b (4), as added by Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 (U. S. Comp. St. Supp. 1911, p. 1496), providing that if, subsequent to the first day of the four months immediately preceding the filing of a petition, the bankrupt has transferred, removed, destroyed, or concealed any of his property with intent to defraud creditors, the discharge shall be denied, though conveyances of property by the bankrupt were made with intent to defraud creditors, even in the hope or expectation of some time getting it back, but with no agreement to this effect, if they were made four months prior to the filing of a petition, it is no ground for refusing the discharge.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 729–731, 737, 738, 740–751, 758, 760, 761; Dec. Dig. § 407.*]

3. BANKRUPTCY (§ 414*)—DISCHARGE—SPECIFICATIONS OF OBJECTION—FRAUDULENT CONVEYANCE—SUFFICIENCY OF EVIDENCE.

Evidence on a hearing of objections to a discharge of a bankrupt, because of a fraudulent concealment of property, *held* to show that conveyances made by the bankrupt more than four months prior to the filing of the petition in bankruptcy were believed by him to have conveyed his

whole title and interest in the property, and therefore insufficient to show that he knowingly concealed the property in his schedule.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 720–722; Dec. Dig. § 414.*]

**4.** BANKRUPTCY (§ 413*)—DISCHARGE—OBJECTIONS TO SPECIFICATION OF OBJECTION—TIME FOR FILING.

Under the court rule that, when no demurrer or motion attacking their sufficiency is interposed to specifications of objection to a discharge until the hearing, or reference to the master, they will be deemed sufficient to present every question fairly suggested, where the specifications alleged that a conveyance by the bankrupt was fraudulent, that he retained possession of the property after the conveyance, and received the rents, and that he had not reported the property in his schedules, fairly raised the question of a fraudulent concealment, in the absence of any demurrer or motion as to their sufficiency.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 712–718, 725, 727; Dec. Dig. § 413.*]

**5.** BANKRUPTCY (§ 421*)—CLAIMS PROVABLE—JUDGMENT OF NEGLIGENCE.

A judgment for damages for negligence, but not for willful and malicious injuries to person, is dischargeable in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 772–774, 776, 777, 779–781, 783–786, 788–790; Dec. Dig. § 421.*]

In Bankruptcy. In the matter of Ernest D. Wakefield. On application for discharge; objections having been filed by Lewis H. Bramer, a creditor. Discharge allowed.

Hancock & Hogan, of Syracuse, N. Y., for bankrupt.

William Kennedy, of Syracuse, N. Y., for objecting creditor.

RAY, District Judge. The only objection to a discharge requiring attention is that subsequent to the first day of the four months immediately preceding the filing of his petition in bankruptcy the said Ernest D. Wakefield transferred, or concealed, or permitted to be concealed, certain of his property, real estate, with intent to hinder, delay, or defraud his creditors, or that while a bankrupt he concealed from his trustee such real property, which, it is alleged, belonged to his estate in bankruptcy. See sections 14 and 29 of the act entitled "An act to create a uniform system of bankruptcy in the United States and territories," approved July 1, 1898, as amended.

Ernest D. Wakefield, the bankrupt, filed his voluntary petition on the 13th day of July, 1907, and on the 16th day of July, 1907, he was adjudicated a bankrupt accordingly. On the 17th day of. August, 1907, he filed his petition for a discharge, and the order to show cause was returnable September 17, 1907. Objections were filed by Lewis H. Bramer, a judgment creditor, and the evidence has been taken and the case submitted.

April 15, 1905, Bramer obtained a judgment against Wakefield and others for the sum of $20,146 damages and costs, no part of which has been paid. This action was commenced September 24, 1903, but was not tried until April, 1905. It is a debt or claim released by a discharge in bankruptcy.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

November 21, 1901, Herriet V. Noble deeded to Ernest D. Wakefield and May F. Wakefield, his wife, their heirs and assigns, the premises at 512 Geddes street, Syracuse, N. Y., and the deed was duly recorded November 22, 1901. The consideration was $1,800, consisting of the assumption of a mortgage thereon of $1,300 and $500 paid, by cash $100 and two notes of $200 each, payable one and two years from date, respectively. Thereafter Mrs. Wakefield, the wife, was ill and taken to the home of her father, James A. Bell, where she remained for some 16 weeks. Mr. Bell testified that he charged Wakefield for board, care, etc., of himself and wife, and rendered a claim of $250 therefor, which was not paid at that time. When the first note became due, Wakefield was unable to pay same, and Mr. Bell paid same, with interest on both notes—in all, $224. The total indebtedness, if it existed at all, was $492, including interest. By warranty deed, dated January 1, 1903, but acknowledged September 4, 1903, Ernest D. Wakefield conveyed to said James A. Bell by warranty deed as follows:

"One-half (½) that tract and parcel of land," etc., being the premises at 512 Geddes street and described in such deed "with the appurtenances, and my one-half (½) the estate, title, and interest therein of the said property of the first part."

Then follow the usual covenants of warranty, etc. This deed was recorded September 4, 1903, having been held by Bell in the meantime. April 14, 1905, and some two years and three months prior to July 13, 1907, when the petition in bankruptcy was filed, Wakefield executed, acknowledged, and delivered to said James A. Bell a quitclaim deed of all his title and interest in said lands and premises, on the theory the premises were held by Wakefield and wife as tenants by the entirety; and it is also claimed that this was done to insure the passing of the title absolute to Bell on the consideration referred to. This deed was recorded on the 15th day of April, 1905. December 4, 1908, said James A. Bell and wife deeded the said premises to May F. Wakefield, and this deed was recorded February 27, 1909.

[1] If these deeds to Bell were mortgages merely, and so intended and understood, or if there was any secret agreement and understanding by which Ernest D. Wakefield retained or was to have the real ownership and title and eventually a deed, and he retained any possession and control of the premises, then he had an interest as owner in the said premises, and his interest therein was property belonging to him and to his estate in bankruptcy, the title of which passed to his trustee in bankruptcy; and if this was true, and Wakefield knew it, then he intentionally concealed while a bankrupt some of his property belonging to his estate in bankruptcy from his trustee, as he did not disclose the facts known to him on his examination or in his schedules. In re Dauchy (D. C.) 10 Am. Bankr. Rep. 527, 122 Fed. 688, and cases there cited, affirmed by C. C. A., Second Circuit, 130 Fed. 532, 65 C. C. A. 78; Hudson v. Mercantile Nat. Bank, 119 Fed. 346, 56 C. C. A. 250, 9 Am. Bankr. Rep. 432; Matter of Borg (D. C.) 184 Fed. 640, 25 Am. Bankr. Rep. 189; In re Breiner (D. C.) 129 Fed. 155, 11 Am. Bankr. Rep. 684; In re Bemis (D. C.) 104 Fed. 672, 5 Am.

Bankr. Rep. 36; In re Welch (D. C.) 100 Fed. 65, 3 Am. Bankr. Rep. 93; Collier on Bankruptcy (9th Ed.) 338. But the proof must be clear and convincing. In the Circuit Court of Appeals, Second Circuit, In re Dauchy, 130 Fed., supra, the court said:

"In order to establish a fraudulent concealment, it must appear that the property concealed belongs to the bankrupt's estate. It must be shown that the transfer was merely a temporary expedient to place the property beyond the reach of the trustee, the title to be resumed by the bankrupt as soon as prudence will permit. In other words, it must be proved that a secret trust exists in her favor, and that her son is under agreement, expressed or implied, to reconvey the property to her when the danger of attack by the creditors has passed. Were we permitted to indulge in speculation and guesswork, and to substitute suspicion for proof, it would not be difficult to sustain the creditors' contention; but the burden is upon them to establish by clear and convincing evidence that the bankrupt has been guilty of the offenses alleged."

In Collier on Bankruptcy (9th Ed.) 331, 332, it is said:

"The ordinary rules of evidence control. Proof must be strict and convincing, but not necessarily to the limit required in proving a crime. Evidence will be confined to the specifications. The burden of proof is upon the opposing creditor, unless the question presented is the construction of the statute. It is not necessary that the alleged ground for refusing a discharge be proved beyond a reasonable doubt, as in the case of the trial of a criminal offense, although the conscience of the court should be satisfied by clear and convincing testimony that the bankrupt is not entitled to his discharge. If the ground depended upon is an offense for which the bankrupt may be punished, it is probable that a greater degree of proof should be required."

[2] It may be true, and quite likely is true, that Wakefield transferred all his property, on the eve of the judgment referred to, to hinder, delay, and defraud his creditors; but, as the transfers were more than four months prior to filing his petition in bankruptcy, this fact is not ground for refusing a discharge. The language of section 14b (4), the only clause applicable here, is:

"At any time *subsequent* to the first day of the four months immediately preceding the filing of the petition, transferred, removed, destroyed, or concealed, or permitted to be removed, destroyed, or concealed, any of his property, with intent to hinder, delay, or defraud his creditors," the judge shall deny a discharge.

Personally I would remove the limitation to the four months preceding the filing of the petition; but courts do not legislate, and here there is no opening for a construction of the language.

[3] We return, then, to the proposition whether the proof establishes that Wakefield retained any ownership in this property and knowingly or fraudulently concealed the fact from his trustee in bankruptcy. Clearly there was no transfer within four months of his filing his petition in bankruptcy; but if he had an interest in this property, and concealed the facts when he filed his petition and schedules, he concealed this property, and if it was done to hinder, delay, or defraud his creditors—that is, enable him to secure a discharge in bankruptcy and at the same time retain this property or his interest therein—he is not entitled to a discharge under section 14b (4); and under section 14b (1), by referring to the provisions of section 29, "Offenses," we find that if he "knowingly and willfully concealed while a bankrupt  *  *  *  from his trustee any of the property be-

longing to his estate in bankruptcy"—that is, his interest in this property in question—by knowingly and willfully omitting it from his schedules, and not disclosing the facts to his trustee thereafter, he is not entitled to a discharge.

That the first deed of this property from Ernest D. Wakefield to James A. Bell, the one dated January 1, 1903, acknowledged September 4, 1903, and recorded the same day, was a mortgage merely, and so given, received, and held, is plainly shown by the evidence of Ernest D. Wakefield in his testimony before Brainerd, Referee, when he said that he and his wife took title, and that it stayed in him until January 1, 1903, when he deeded it to James A. Bell, and then, after stating the consideration for conveyance, his indebtedness to Bell on account of Bell having furnished board, etc., and paid the two notes of $200 each, he said:

"Q. How did you come to convey to him (Bell)? A. At the time I deeded the property to him, I was not able to pay the notes, and he took the deed as security, and I owed him money besides that. Q. How much did you owe him besides that? A. Pretty close to $250, Q. So you owed him altogether, as you stated, about $650? A. Yes, sir. Q. And to secure that indebtedness you turned over your half interest in the block to him; is that right? A. That's right. Q. And he now holds that block under that arrangement? A. Yes, sir."

Bell testified two or three times that he took that deed as security, and that he treated both deeds in the same light is demonstrated by his evidence to the effect that when he was paid he expected to give a deed back, and that when Mrs. Wakefield paid him some $800 he did deed to her. The evidence before Brainerd was given in July, 1908, and at that time the objecting creditor was fully informed of the situation. The title, whatever it was, under that and the subsequent deed of April 14, 1905, was then in Bell, and suit could have been and should have been instituted to reclaim the property, if there was any equity in it. At that same time, however, Wakefield testified that he had deeded absolute at a date later than January 1, 1903, to Bell, and that he so deeded under advice of counsel. Bell ought to have been examined at that time, and some effort made to reclaim the property for the benefit of the estate, if there was any equity in the property. In December, 1908, Bell and wife deeded to their daughter, May F. Wakefield, the wife of Ernest D. Wakefield, and who owned an undivided one-half interest in the property. Here we have Wakefield, during the pendency of the bankruptcy proceedings, disclosing the situation under oath, just as he now claims it to be and to have been. His claim was and is that the second deed transferred title absolute, and was so intended by him, and so understood. There is no evidence of any secret understanding or agreement between Wakefield and Bell, by which Wakefield reserved any secret interest, or by which at a subsequent period he was to have a deed, or that Bell did not pay the notes and have a just claim for the $250 board, etc.

It is, of course, repugnant to our fine sense of generous action to find a well-to-do father making such charges for such a purpose against his son-in-law of no pecuniary ability, at that time, in his affliction; but we cannot doubt the legal right to make the charge and

insist on payment. Coming at the time it did, and in view of the suit on the claim resulting in the large judgment, we naturally suspect the charge would not have been made, or security taken for its payment, or payment exacted, but for the claim of this objecting creditor, resulting in the judgment mentioned. However, this is suspicion; and, while it may carry moral conviction, it is not legal proof. If Wakefield, at the time he filed his petition and made his schedules and gave his testimony referred to, believed that the second deed transferred the title absolute to Bell, we are not justified in finding that he "knowingly and fraudulently concealed while a bankrupt * * * from his trustee any of the property belonging to his estate in bankruptcy," or that Wakefield "at any time subsequent to the first day of the four months immediately preceding the filing of the petition, transferred, removed, destroyed or *concealed,* or permitted to be removed, destroyed or *concealed,* any of his property with intent to hinder, delay or defraud his creditors." If he honestly believed that more than four months prior to filing his petition he had actually transferred the whole title to another, he was not guilty of a concealment with fraudulent intent or purpose, even if he so transferred outside the four-months period to hinder, delay, and defraud his creditors, as it seems probable he did here. I think the evidence fails to establish that after the last deed Wakefield thought the title to this property, or any part of it, was in himself prior to, at, or at any time during his bankruptcy. Before the referee, Wakefield, after having given the testimony quoted, was further examined by the attorney for the objecting creditor as follows:

"Q. Now, does that transaction remain as it did, as security for the repayment of $650? A. Yes, sir. Q. And is that property in the hands of a trustee? A. No; he has possession. I do not understand what you mean. Q. Well, according to your statement, he has security for the repayment of that $650, and that he still holds the property in that way? A. I deeded it to him absolute. Q. Did you sell an account for the repayment of the $650? A. I did, of the first deed. Q. Oh; you made another deed; when was that? A. I cannot say the date."

Then the time of giving the second deed was fixed as the day of the trial of the action referred to, and then this:

"Q. Did your father-in-law ask you for a deed of the property? A. No. Q. Then you voluntarily gave him a deed of the property, without his asking for it? A. I gave it to him on the advice of my counsel. Q. Mr. Emerson advised you to give him a deed? A. Yes, sir. Q. Why? A. He claimed that the deed I gave him, the deed of the property, was a joint deed, and the deed that I gave to my father-in-law was my individual one-half interest, and Mr. Emerson said I should give him a deed of my whole interest in the property. Q. Why was it done at all? A. On the advice of my counsel. * * * Q. And from that time you never have had anything to do with the property? A. No, sir. Q. Have you received the rents? A. No, sir. Q. Have you rented the stores? A. I have practically had the management of the property since that time."

The receipt of rents by the wife and her father, and their division of them, is testified to, and it does not appear that Wakefield had any part thereof. I think and hold that the deed of January 1, 1903, was a mortgage merely, and intended as such, but that the attorney,

discovering the situation on the evening of the trial of the action referred to, advised an absolute deed, and secured one from Wakefield, and that Wakefield understood at the time, and from then on, that the last deed was a deed absolute, and conveyed the absolute title. That it was given in fraud of creditors, and to defeat the collection of the judgment, no intelligent person can doubt. But, as I have stated, a conveyance of real property in fraud of creditors, even in the hope or expectation of some day getting it back, but in the absence of some agreement or understanding to that effect, will not defeat a bankrupt's discharge, unless made within the four months immediately preceding the filing of the petition. However much the court would like to change the law, and apply it to this case, it is powerless to do so. In Re Downing (D. C.) 199 Fed. 329, 28 Am. Bankr. Rep. 778, this same question (see proposed grounds of opposition to discharge, 28 Am. Bankr. Rep. pages 781, 782), was before this court, and it was held that the facts would not justify the refusal of a discharge, even should the discharge before granted be set aside, and the specifications of objection proposed filed, and the facts alleged therein proved. In Re Dauchey, supra, the same question was presented before this court, and urged in the Circuit Court of Appeals on appeal; but that court, in affirming the order, in substance said that as the law stands fraudulent conveyances made more than four months prior to the petition in bankruptcy, in the absence of convincing proof of a secret trust, are not ground for refusing a discharge.

[4] Reference has been made to the specifications of objection as insufficient to raise the question of a secret trust or ownership in Wakefield. I do not think this objection well taken, as a rule of this court provides that when specifications of objection are filed, and no demurrer or motion as to their sufficiency is interposed to their sufficiency prior to the hearing thereon, or reference thereof to the master, they shall be deemed sufficient to present every question fairly suggested thereby. Here the objecting creditor set out the fraudulent transfer, and then alleges that Wakefield—

"retained possession of said real property and received the rents, issues, and profits thereof; that said Ernest D. Wakefield has made no reference to the said 'real property in the schedules filed in this court *showing the property owned and possessed by him*, and the same does not appear as an asset to his estate herein."

Evidently it was the purpose of the objector to assert that the alleged transfer was fraudulent, merely colorable, and not intended to pass title, and that Wakefield, remaining in possession, had in fact, by some agreement or understanding, retained the ownership and was then the owner of such real property. This is plainly suggested by the specifications of objection, and, under the rule referred to, the question is fairly raised and presented, and has been carefully considered.

[5] This judgment against Wakefield and others was for damages for negligence, but not for "willful and malicious injuries to the person," and is dischargeable in bankruptcy. The schedules show that this judgment in favor of Bramer of $20,146, and one of only

$4.50 in favor of one John H. Beaumont, were the only liabilities of the bankrupt. This court has also considered the fact that the other defendants in that suit and judgment also disposed of all their property by devious methods; but no real connection or concert of action with Ernest D. Wakefield is shown. Even if it were, such fact does not establish that Ernest D. Wakefield retained any ownership in this property.

The trustee in bankruptcy was vested with the right to set aside this transfer, made more than four months prior to the filing of the petition, as made in fraud of creditors. Section 70a and section 70e, where it is provided that a trustee in bankruptcy upon his appointment and qualification shall be vested by operation of law with the title of the bankrupt "(4) property transferred by him in fraud of his creditors," and (sec. 70e)—

"the trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided, and may recover the property so transferred, or its value, from the person to whom it was transferred, unless he was a bona fide holder for value prior to the date of the adjudication," etc.

But this has nothing to do with the question this court is called upon to decide, which is: Did Wakefield retain any title in this property knowingly and conceal the facts? If the last deed was in fact in equity but a mortgage, and Wakefield knew it, or there was any secret trust, which, of course, he knew, if there was one, he is not entitled to his discharge; otherwise, under the law as it stands, he is. As already stated, the burden of proof was on the objecting creditor, and there must be convincing and satisfactory proof, not suspicious circumstances only. The equities are all with the objecting creditor; but he is not able to make proof, and the law is with the bankrupt.

There will be an order granting the discharge prayed for.